**AETNA INSURANCE COMPANY OF the MIDWEST, Appellant,**

v.

**John RODRIGUEZ; John Rodriguez, d/b/a Atlas Transmission; John Rodriguez, d/b/a Custom Automotive; Shaver Motors, Inc., and Associated Adjusters,**

**and**

**Shaver Motors, Inc., Appellees.**

**No. 3–1085A277.**

Court of Appeals of Indiana, Third District.

March 12, 1987.

Rehearing Denied May 6, 1987.

Charles T. Jennings, Donna H. Fisher, Jennings, Maas & Stickney, Indianapolis, for appellant.

Clyde D. Compton, Bonnie C. Coleman, Hodges, Davis, Gruenberg, Compton & Sayers, P.C., Merrillville, for appellee Shaver Motors, Inc.

Edward A. Chapleau, South Bend, for appellee Associated Adjusters, Inc.

Nicholas J. Anast, Tokarski & Anast, Schererville, John Kappos, Merrillville, for appellee John Rodriguez.

### OPINION ON REHEARING

GARRARD, Presiding Judge.

Shaver Motors, Inc. has petitioned for rehearing contending *inter alia* that we mistakenly stated the record in our original decision reported at 496 N.E.2d 1321. Regretfully, we agree. We, therefore, grant rehearing, vacate our prior opinion and issue the following decision.

In 1979 John Rodriguez (Rodriguez) bought a building from Shaver Motors, Inc. (Shaver). Shaver took a mortgage on the property to finance the balance of the purchase price. Rodriguez was required to keep the premises insured for Shaver's benefit. Rodriguez contacted Nick George (George) to procure insurance. In the due course of time Aetna Insurance Company of the Midwest (Aetna) issued its policy to Rodriguez. The policy contained a standard mortgage clause which, by its terms, would protect any mortgagee named in the declarations.

When the building was heavily damaged by fire, both Rodriguez and Shaver submitted claims under the policy. Aetna de-nied Rodriguez' claim on the basis of arson and fraud. It also denied Shaver's claim on the basis that as named in the policy, Shaver was merely an additional insured and was subject to Aetna's defenses against Rodriguez.

Page three of the policy declarations incorporated by reference endorsement "KK–6L00 contract seller." The endorsement in question listed "Contract Seller, Shaver Chevy, 1550 E. 61st Ave., Merrillville, In. 46410."

When this litigation ensued both sides moved for summary judgment. The trial court granted summary judgment to Shaver, stating:

"We have a prospective insured, Rodriguez, without a high school education (although he has made more money than most Judges will ever see) buying a product in a highly technical field. He knows he wants fire insurance to protect his property and knows that he must have insurance to protect the former owner of the property to whom he still owes money. He contacts an insurance broker-agent who under the specific facts of this case, is the agent of the company and not that of the prospective insured.

"The only facts in the record show that the prospective insured, Rodriguez, tells the broker-agent that he is buying this property from Shaver Chevy and making payments; that he wants insurance and wants Shaver Chevy protected on it.

The prospective insured does not know the difference between contracts and mortgages, much less the legal differences between the defenses of an insurance company as to contract sellers, loss payees, and mortgagees. I proffer the thought that, although others may know the distinction between the actual terms, only insurance attorneys and underwriters know the distinction as to company defenses which may be invoked against each of the above three classes of insureds, and I further suggest that many agents do not understand same or know there is a difference between the defenses.

No one asked the proposed insured: 'Are you buying this real estate on a long term conditional sale contract or did you get a deed then in return sign a promissory note and a real estate mortgage?' Neither did anyone check the Recorder's Office to determine any correct facts. No one even checked the correct names of the parties, but simply used the street vernacular.

The broker-agent and company were faced with a situation in which the words used by the prospective insured, Rodriguez, were susceptible to two or more meanings or interpretations. They did nothing to determine the correct interpretation or facts, but simply adopted the interpretation and wrote the insurance policy in the manner most legally advantageous to the company. When a company is faced with facts susceptible of many interpretations, said company is then under a duty to determine the correct interpretations and not simply adopt the one most advantageous to themselve[s] to the detriment of all others.

This is not a situation in which the proposed insured committed an intentional fraud by withholding information. He specifically made it known that someone else had an interest in this property and that he wanted them protected. He did not withhold any requested information, nor deliberately mislead the company. Neither is this a situation where the company is entitled to rely upon the application for insurance. There is no evidence there was ever any appli[c]ation.

Neither is this a case where Shaver was not a mortgagee, but was listed as one and after a loss, it tried to claim the proceeds as a mortgagee. Shaver was an actual mortgagee and had recorded their mortgage which is notice to any dealing with this property.

Under the particular facts of this case, Aetna is estopped to deny coverage to Shaver as a mortgagee.

Shaver should collect the amount of the principal secured by their mortgage together with pre-judgment interest at the same rate as the promissory note of Rodriguez to Shaver.

Shaver has asked for punitive damages. Shaver, prior to the loss, had a receipt showing that Rodriguez had purchased insurance. Shaver did not contact Aetna and object to their listing as a 'contract seller.' Thus, there is a legitimate controversy for trial and in as much as Shaver could also have prevented the conflict, it is now estopped to claim punitive damages.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that Shaver Motors, Inc., should recover of and from Aetna Insurance Company of the Midwest the total sum of One Hundred One Thousand, Eight Hundred Sixty-five Dollars and Thirty-five Cents ($101,865.35), being $92,765.98 principal, $4,185.07 as interest from 11/18/84 to 4/1/85, and $4,914.30 (sic) as interest from 4/1/85 to 10/1/85."

Transcript at 644.

■ Aetna appeals. Although the trial judge cast his decision in terms of estoppel, we will also consider the arguments concerning proper contract interpretation since it is our duty to affirm a summary judgment if it was properly entered on any ground. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51.

■ A written contract of insurance is governed by the normal rules of contract law, although any ambiguities will normally be resolved in favor of the insured. It is the court's duty to enforce the intentions of the parties as they have manifested them in the written instrument. *Evans v. National Life Acc. Ins. Co.* (1984), Ind.App., 467 N.E.2d 1216.

■ Here the insurance contract stated: "MORTGAGEE AND TRUSTEE INTEREST

If there is loss to any real property covered under YOUR PROPERTY COVERAGE, we will pay any mortgagee or trustee named in the Declarations up to his, her or its interest in that property. This provision will apply to all present or future mortgages in the order of precedence of these mortgages.

Regarding the interest of any mortgagee or trustee designated in the Declarations, this insurance will not be invalidated by any of the following:

* any act or neglect by any mortgagor or owner of the property;
* foreclosure or other proceedings, or notice of sale relating to the property;
* change in the title or ownership of the property; or
* occupation of the premises for purposes more hazardous than existed when this insurance took effect."

Thus, it appears to us that the primary law question raised is whether "any mortgagee" as used in the policy should be interpreted to include land contract sellers. If it should, then the court need not reach additional questions concerning the effect of misnaming Shaver's interest, whose agent George was in so naming Shaver, and whether the actions of one of the parties served to create an estoppel.

Aetna argues that we should maintain a distinction between contract sellers and mortgagees because a contract seller has only an interest in the proceeds of a policy (i.e., it is subject to all defenses against the primary insured) whereas a mortgagee under the mortgage clause is protected against acts or neglect of the mortgagor. It also urges that under the policy language it can look to a mortgagee for premium payments if the primary insured fails to make them, but it may not do so with a contract seller. The problem with both these arguments is that they beg the question.[1] If naming a party in the declarations and/or endorsements as contract seller is equivalent to naming the party as "any mortgagee" then the distinctions disappear. Aetna does not urge any critical differences between contract sellers and mortgagees which would affect its risks or ratings requirements or the relationship between the parties themselves.

Aetna does point to the traditional distinction between sellers on land contracts and mortgagees. It cites *Insurance Co. of N.A. v. Nicholas* (1976), 259 Ark. 390, 533 S.W.2d 204; *General Elec. Credit Corp. v. Aetna Cas. & Sur. Co.* (1970) 437 Pa. 463, 263 A.2d 448; and *Pacific Ins. Co. v. R.L. Kimsey Cotton Co.* (1966), 114 Ga.App. 411, 151 S.E.2d 541. These decisions from other states have no direct bearing on the question to be decided. In both *Nicholas* and *R.M. Kimsey Cotton* the lienholder was not named in the policy in any fashion. Only *Nicholas* involved a land contract seller. The *General Electric* case concerned a security interest in only personal property (restaurant equipment).

We do find assistance much closer to home. Some six years before issuance of the policy now in question our Supreme Court decided *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641. Therein the court decided that conditional purchasers of real estate were generally to be entitled to foreclosure proceedings upon default despite express forfeiture provisions in the contract.

What is striking about *Skendzel* in the present context is the reasoning and conclusions employed by the court in reaching its result. It stated, *inter alia:*[2]

> "Conceptually, therefore, the retention of the title [to real estate] by the vendor is the same as reserving a lien or mortgage. Realistically, vendor-vendee should be viewed as mortgagee-mortgagor. To conceive of the relationship in different terms is to pay homage to form over substance.
>
> * * * * * *
>
> Where the title is retained by the seller as security for the payment of the debt, the security is, in this country, very generally regarded as possessing all the essential features of a mortgage, and the vendor as standing for all practical pur-

1. So does the argument, citing *Lakeshore Bank & Trust Co. v. United Farm Bureau Mut. Ins. Co.* (1985), Ind.App., 474 N.E.2d 1024 that in general a mortgagee has no interest in a policy unless it is bestowed by some covenant or condition in the policy.

2. Citations from text are omitted.

**1034**

poses as mortgagee in relation to the vendee.

\* \* \* \* \* \*

The general rule is that, where in a contract for sale the vendor reserves title, 'the transaction creates in equity the relation of mortgagor and mortgagee.'

\* \* \* \* \* \*

This lien [created by land contract] is closely analogous to a mortgage—in fact, the vendor is commonly referred to as an 'equitable mortgagee.' "

301 N.E.2d at 646–8.

At least since *Skendzel* we have recognized that both the rights and interests of contract sellers and mortgagees are substantially identical.[3] So much so that the court has expressly approved terming contract sellers as equitable mortgagees.

The policy here entered into by the parties attempts no finely spun definitions of mortgagee distinguishing between legal and equitable mortgagees nor does it attempt any express distinction between mortgagees and contract sellers. To the extent that failure creates any ambiguity in the policy, it should be resolved in favor of the policy holder. But we think the policy is not ambiguous.

The critical act is the express naming of the party in the policy and identifying that party's status or interest. Naming the party as contract seller met that requirement, and under Indiana law was a sufficient designation of the party as equitable mortgagee to invoke the operation of the mortgagee clause.

We further note that to hold otherwise would deny to many sellers by land contract a protection they thought they were securing by requiring their purchasers to secure a loss clause endorsement in their favor unless they were sophisticated enough to bargain for a special provision protecting them from any act or neglect of their purchaser. Such a contruction would be unreasonable in view of the identity of interests between contract sellers and mortgagees.

---

**3.** Since 1980 IC 6–1.1–12–1 has permitted contract purchasers to claim the same deduction as

It follows that summary judgment was appropriately granted in favor of Shaver.

Affirmed.

HOFFMAN, and STATON, JJ., concur.

mortgagors in the assessment of real property taxes.