In the Matter of FEDERAL PRESS
COMPANY, INC., Debtor.

COLUMBIA CASUALTY
COMPANY, Plaintiff,

v.

FEDERAL PRESS COMPANY, et
al., Defendants.

Bankruptcy No. 85–30932–RKR.
Adv. Proc. No. 85–3159.

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Aug. 17, 1989.

William A. Thorne, and James R. Byron,
Elkhart, Ind., for debtor.

Carol Proctor, Hinshaw, Culbertson,
Moelmann, Hoban & Fuller, Chicago, Ill.,
and Kathleen Maicher, Spangler, Jennings,
Spangler & Dougherty, Merrillville, Ind.,
for Columbia Cas. Co.

Joseph M. Forte, South Bend, Ind., for
Centaur Ins. Co.

John J. Lorber, South Bend, Ind., for
Forum Ins. Co.

William Nye, Elkhart, Ind., for Creditors
Committee.

## ORDER

ROBERT K. RODIBAUGH, Senior
Bankruptcy Judge.

On November 8, 1985, Columbia Casualty Company ("Columbia") filed its Complaint for Declaratory Judgment requesting the court to determine the rights and liabilities of the parties with respect to certain insurance policies issued by Columbia to Federal Press Company, Inc. ("Federal Press"), the debtor herein. On March 25, 1986, and again on April 10, 1989, Columbia amended its complaint adding other insurers of Federal Press and various individuals as defendants. On November 27, 1987, Federal Press, Columbia, Centaur Insurance Company ("Centaur"), and Forum Insurance Company ("Forum"), filed a Settlement Agreement and Stipulations of Issues to be Submitted to the Court ("Settlement Agreement"). In the Settlement Agreement the parties agreed, among other things, to have the court determine the matter without a hearing. The court approved the Settlement Agreement on December 15, 1987. Thereafter, on August 22, 1988, Columbia filed its motion to require Federal Press to assume or reject executory contracts in the main case. Federal Press filed its response and objection to Columbia's motion on September 26,

1988. The court held a hearing on the motion and objection thereto on September 29, 1988, and took the matter under advisement on October 11, 1988. At the September 29, 1988, hearing the court agreed to consider the motion to assume or reject executory contracts in conjunction with its decision on the complaint for declaratory judgment. On January 6, 1989, following the time allowed for submitting briefs, the court took the complaint for declaratory judgment under advisement.

*Background*

Federal Press filed its petition under Chapter 11 of the Bankruptcy Code on September 3, 1985. At the time of the filing of the petition several persons who had been injured while operating machinery manufactured by Federal Press held claims against Federal Press. Additional tort claimants have filed claims against Federal Press since the filing of the petition. The insurance companies which are parties to this action issued liability insurance policies to Federal Press during the periods in which the various claimants suffered their injuries. The disputes herein involve the question of the rights and obligations of Federal Press, Columbia, Centaur and Forum with respect to the insurance policies issued and the question of the executory nature of the insurance contracts. The stipulated facts are fully set forth in the Settlement Agreement submitted on November 27, 1987, and approved by the court on December 15, 1987. The court will review the general provisions of the insurance policies which Columbia, Centaur and Forum issued to Federal Press as well as the portions of the Settlement Agreement and other necessary facts which apply directly to the issues before the court.

1. *Summary of the provisions of the insurance policies issued to Federal Press*

Columbia, Centaur and Forum issued insurance policies to Federal Press between January 1, 1983, and May 21, 1985. The court summarizes below the type of insurance policies issued by the companies, the insurance periods, and the basic provisions of the policies.

a. *Policies issued by Columbia*

Columbia issued to Federal Press three excess liability insurance policies which were in effect for the periods from January 1, 1983, to January 1, 1984; January 1, 1984, to January 1, 1985; and January 1, 1985, to May 21, 1985, respectively. The Columbia policies provide that Columbia will indemnify Federal Press for its net losses for each policy period in excess of a limit of $300,000, to be retained and paid by Federal Press as self-insurance, to a maximum of $800,000. The Columbia policies cover personal injury, property damage, and ultimate net losses "arising out of the products hazard or the completed operations hazard." Settlement Agreement, Exhibits A, B, and C at 1.

Under the terms of the policies after Federal Press exhausts the amount of its self-insured retention by paying judgments, settlements and defense costs, Columbia is obligated to reimburse Federal Press for defense costs incurred up to the limit of Columbia's liability. The policies give Columbia the right at its own expense to associate itself with Federal Press in controlling, negotiating, investigating, and defending any claim or proceeding which might be covered by the policies. Federal Press agrees in the policies not to settle a claim for an amount in excess of its self-insured retention without the prior written consent of Columbia. In the event of an occurrence reasonably likely to involve Columbia, Federal Press is to notify Columbia in writing of the incident and forward to Columbia every demand, notice, summons or other process received by it or its representative. The policies further provide that Federal Press is to cooperate with Columbia and upon its request, assist in making settlements, in conducting lawsuits, and in enforcing any right of contribution or indemnity against any person or organization who might be liable to Federal Press.

The policies also provide that Columbia will not be liable with respect to an occurrence unless, as a condition precedent

thereto, Federal Press fully complies with all the terms of the policies and until the amount of Federal Press' ultimate net loss is finally determined either by judgment or by written agreement of Federal Press, the claimant and Columbia. The policies state that the bankruptcy or insolvency of Federal Press will not relieve Columbia of any of its obligations under the policies.

### b. *Policies issued by Centaur*

Centaur in turn issued to Federal Press two commercial liability umbrella policies for the periods from January 1, 1983, to January 1, 1984, and January 1, 1984, to January 1, 1985, respectively. Centaur's policies were in effect during the same periods of time for which Columbia issued its first two liability policies. Centaur's policies provide excess insurance over and above the underlying insurance issued by Columbia up to a limit of $10,000,000. Generally, under the terms of the policies, Centaur is not liable for any judgments or defense costs until the underlying insurance and retained limits have been paid and exhausted.

### c. *Policy issued by Forum*

Forum issued to Federal Press a commercial comprehensive catastrophe liability policy for the period from January 1, 1985, to May 21, 1985. Forum's policy was in effect during the same period of time for which Columbia issued its last excess liability policy to Federal Press. Like the policies issued by Centaur, Forum's policy provides excess insurance over and above the underlying coverage issued by Columbia. The limit of Forum's insurance coverage, however, is $1,800,000. Generally, under the terms of the policy, Forum is not liable for any judgments or defense costs until the underlying insurance and retained limits have been paid and exhausted.

To summarize, in the year 1983, Federal Press had a self-retained limit of $300,000 under the Columbia policy, and Columbia and Centaur provided the following levels of insurance:

| NAME | AMOUNT |
| --- | --- |
| Federal Press Company under its retained limit | –0– to $300,000 |
| Columbia under Policy No. SXP 358 40 71 | $300,001–$800,000 |
| Centaur under Policy No. CU–00545 | $800,001–$10,000,000 |

In the year 1984, Federal Press had a retained limit of $300,000, and Columbia and Centaur provided the following levels of insurance:

| NAME | AMOUNT |
| --- | --- |
| Federal Press Company under its retained limit | –0– to $300,000 |
| Columbia under Policy No. SXP 358 40 86 | $300,001–$800,000 |
| Centaur under Policy No. CU–00774 | $800,001–$10,000,000 |

For the period beginning January 1, 1985, and ending May 21, 1985, Federal Press had a retained limit of $300,000 under the Columbia policy, and Columbia and Forum provided the following levels of insurance:

| NAME | AMOUNT |
| --- | --- |
| Federal Press Company under its retained limit | –0– to $300,000 |
| Columbia under Policy No. SXP 358 41 02 | $300,001–$800,000 |
| Forum under Policy No. UB–100093 | $800,001–$1,800,000 |

Settlement Agreement at 10 and 11.

### 2. *Terms of the Settlement Agreement*

On November 27, 1987, Federal Press, Columbia, Centaur, and Forum filed their Settlement Agreement setting forth the relevant facts, summarizing the insurance policies in controversy and conditions thereto, setting forth certain stipulations, and listing the issues to be decided by the court. The parties requested that the court permit the Settlement Agreement to serve as the pre-trial order in this matter and indicated that they agreed to submit this matter to the court for decision without a hearing following the submission of memoranda in support of their positions. The court approved the Settlement Agreement on December 15, 1987.

In the Settlement Agreement Federal Press, Columbia, Centaur and Forum agree that:

1. The policies issued by Columbia to Federal Press, specifically policies No. SXP 358 40 71, No. SXP 358 40 86, and No. SXP 358 41 02, are not void *ab initio* but instead are in effect for the periods covered by said policies subject to and in accordance with the terms and conditions

of the policies except, however, for any condition that Federal Press maintain a separate loss fund for the payment of all claims and expenses falling within [Federal Press'] retained limit, which condition has been waived by Columbia.

2. The policies issued by Centaur to Federal Press, specifically policy numbers CU–00545 and CU–00774, are not void *ab initio* but instead are in effect for the periods covered by said policies subject to and in accordance with the terms and conditions of said policies.

3. The policy issued by Forum Insurance Company to Federal Press, specifically policy number UB–100093 is not void *ab initio* but instead is in effect for the period covered by the policy subject to and in accordance with the terms and conditions of said policy.

4. Notwithstanding the resolution by the Court of the issues set forth herein, neither Columbia, Centaur nor Forum shall have any obligation that would be included in Federal Press' retained limit as that term is used in the three policies issued by Columbia.

5. Transport Indemnity Insurance Company did not issue any liability insurance policies during the years 1983, 1984 and 1985 and should, therefore, be dismissed with prejudice as a party defendant in this adversary proceeding.

Settlement Agreement at 12–13 (November 27, 1987).

### Discussion and Decision

The court has agreed to address Columbia's Second Amended Complaint for Declaratory Judgment filed in Adversary Proceeding No. 85–3159 in conjunction with its Motion requesting the court to require Federal Press to accept or reject its policies with Columbia filed in the main case. For purposes of this Order the court first will address the issues raised in the complaint and then will consider the motion to require the debtor to accept or reject its policies with Columbia.

### 1. *Rights and obligations of the parties under the insurance policies*

In its Second Amended Complaint for Declaratory Judgment Columbia asks the court to determine the rights and obligations of the parties under the insurance policies issued to Federal Press. In order to simplify the issues raised in the complaint the court arbitrarily divides its analysis and discussion of the rights and obligations of the parties under the insurance policies into the following sections: (a) Indiana law regarding insurance contracts; (b) rights and obligations under the Columbia policies; and (c) rights and obligations under the Centaur and Forum policies.

### a. *Indiana law regarding insurance contracts*

In bankruptcy proceedings, state law controls the construction and validity of ordinary contracts. *Greives v. Bank of Western Indiana (In re Greives)*, 81 B.R. 912, 949 (Bankr.N.D.Ind.1987) (citing *Transcontinental & Western Air, Inc. v. Koppal*, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953); *In re Pointer Brewing Co.*, 105 F.2d 478 (8th Cir.1939); and *Delta Corp. of America v. Sebrite Corp.*, 391 F.Supp. 638 (E.D.Tenn.1974)). In Indiana contracts for insurance are subject to the same rules of interpretation as are other contracts. *Eli Lilly and Co. v. Homes Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985) (citations omitted). The court's duty is to enforce the parties' intentions as set forth in the insurance policy. *Aetna Ins. Co. of the Midwest v. Rodriguez*, 504 N.E.2d 1030, 1032 (Ind.App.1987), *set aside on other grounds*, 517 N.E.2d 386 (Ind.1988). Hence, courts are to apply the plain, ordinary meaning of the policy provisions without addition or elaboration unless the language of the policy is ambiguous. *White v. Western Diversified Ins. Co.*, 524 N.E.2d 1304, 1305 (Ind.App.1988).

An insurance contract is ambiguous only if reasonable persons would differ as to the meaning of its terms upon reading the contract. *Eli Lilly*, 482 N.E.2d at 470; *Sharp v. Indiana Union Mut. Ins. Co.*, 526 N.E.2d 237, 239 (Ind.App.1988). If ambiguity exists in the policy language, the court should construe the language liberally in favor of the insured. 482 N.E.2d at

470; *Cincinnati Ins. Co. v. Mallon,* 409 N.E.2d 1100, 1103 (Ind.App.1980); *Utica Mut. Ins. Co. v. Ueding,* 370 N.E.2d 373 (Ind.App.1977). In addition, the court should interpret an ambiguous policy to further the policy's purpose of indemnity. 482 N.E.2d at 470 (citing *Masonic Accident Ins. Co. v. Jackson,* 200 Ind. 472, 164 N.E. 628 (1929) and *American Economy Ins. Co. v. Liggett,* 426 N.E.2d 136 (Ind.App. 1981)). Notably, however, the mere fact that a controversy exists concerning an insurance policy and the parties to the contract assert opposing interpretations of the policy does not establish that ambiguity exists within the policy. *Sharp,* 526 N.E.2d at 239 (citing *Automobile Underwriters, Inc. v. Hitch,* 169 Ind.App. 453, 349 N.E.2d 271, 275 (1976), *trans. denied.*)

If an insurance company is able to show that it has suffered prejudice due to the insured's failure to comply with conditions precedent in the policy, the insurance company may avoid its liability under the policy. *Miller v. Dilts,* 463 N.E.2d 257, 261 (Ind.1984). Under Indiana law an insurance company must show actual prejudice in order to avoid liability for an insured's lack of compliance with a cooperation clause. *Id.* Whereas, prejudice resulting from an insured's unreasonable delay in notifying the company of a lawsuit under the policy can be presumed. *Id.* at 265. *See also Hartford Accident & Indemn. Co. v. Lochmandy Buick Sales, Inc.,* 302 F.2d 565 (7th Cir.1962) and *Ohio Casualty Ins. Co. v. Rynearson,* 507 F.2d 573 (7th Cir.1974) (both interpreting Indiana law and concluding that prejudice arises as a matter of law where notice is unreasonably late).

b. *Rights and obligations under the Columbia policies*

(1) Federal Press' retained limit in the Columbia policies

The Columbia policies provide that Columbia "will indemnify the Insured for ultimate net loss in excess of the retained limit

... which the Insured shall become legally obligated to pay as damages because of ... personal injury or ... property damage to which this policy applies, caused by an occurrence." Settlement Agreement at 3. The policies state that Federal Press' retained limit is $300,000 ultimate net loss resulting from any one occurrence because of personal injury or property damage or both combined and $300,000 ultimate net loss resulting from occurrences during each policy year arising out of the products hazard or the completed operations hazard. *Id.* at 5. The "ultimate net loss" in the policies means "the sums for which the Insured is legally liable as damages by reason of a judgment or settlement made with the written consent of the claimant, the Insured and the Company (Columbia)." *Id.* at 9. The policies explain that for purposes of determining the retained limit under the policies, all damages arising out of continuous or repeated exposure to substantially the same conditions are to be considered as arising out of one occurrence. *Id.* at 3.

These provisions clearly indicate that Columbia has the obligation to indemnify Federal Press for amounts in excess of Federal Press' $300,000 retained limit up to the amount of its coverage for each of the policy years. As the personal injury tort claims against Federal Press fall within those items which the policies cover, Columbia is obligated to indemnify Federal Press for damages in excess of the retained limits which it becomes legally obligated to pay as a result of the personal injuries unless this duty is negated by other parts of the Columbia policies. The policies place no obligation upon Columbia to pay damages falling within the amounts of the retained limit which Federal Press has the duty to pay. Moreover, such a result cannot be inferred as a matter of law. *Ryder Truck Lines, Inc. v. Carolina Casualty Ins. Co.,* 270 Ind. 315, 385 N.E.2d 449, 452 (1979).[1] The provisions regarding the in-

---

1. In *Ryder* the Indiana Supreme Court considered whether an excess insurance carrier should be required to indemnify its insured for a $25,000 deductible amount. The court agreed

with the Court of Appeals, noting "that the liability of the insurer under an excess insurance clause arises only after the limits of the primary policy are exhausted," and holding that the ex-

sured's retained limit do not purport to excuse Columbia from its obligations in the event Federal Press fails to pay the retained limit of $300,000.

### (2) Payment of defense costs under the Columbia policies

An Amendatory Endorsement to the Columbia policies adds the following provisions regarding the payment of defense costs under the policies:

> After the amount of the self-insured retention has been exhausted by payment of judgments, settlements and defense costs, the company will reimburse the insured for excess defense costs incurred by the insured. However, excess defense costs are subject to and not in addition to, the limit of the company's liability.
>
> The company at its own expense, shall have the right to associate itself with the insured in the control, negotiation, investigation, defense or appeal of any claim or proceeding which in the opinion of the company is or may be covered by this policy. The insured shall fully cooperate in all matters pertaining to such claim or proceeding.
>
> No claim shall be settled for an amount in excess of the self-insured retention without the prior written consent of the company.
>
> The company has the right to recommend settlement of a claim which in its opinion involves or may involve the excess limits of liability afforded by this policy. The rejection of a negotiated settlement for a definite amount by the insured shall limit the company's liability to the total amount of the settlement recommended and defense costs and excess defense costs incurred to the date of the recommendation less the self-insured retention.

Settlement Agreement at 5 and 6. The policies define "defense costs" as "reasonable fees charged by an attorney and all other reasonable fees, costs and expenses attributable to the investigation, defense or appeal of a claim within the scope of coverage ..." with certain exceptions for employees or agencies hired by the insured. *Id.* at 6. "Excess defense costs" are those which are "incurred by the insured with the written consent of the company after the self-insured retention has been exhausted by payment of judgments, settlements and defense costs." *Id.* The term "ultimate net loss" within the policies includes "excess defense costs." *Id.*

These provisions set forth Columbia's duty to reimburse Federal Press for excess defense costs which it incurs. The provisions do not specifically state that Federal Press must pay for defense costs within its retained limit but instead state that "[a]fter the amount of the self-insured retention has been exhausted by payment of judgments, settlements and defense costs," Columbia's obligation to reimburse Federal Press begins. *Id.* at 5. Although the policies do not expressly state that Federal Press is obligated to pay defense costs falling within the retained limit, the court believes that this conclusion may be fairly inferred from the language of the policies. The court thus finds that the parties intended for Federal Press to pay defense costs up to the amount of its retained limit without reimbursement from Columbia and for Federal Press to pay defense costs in excess of its retained limit with reimbursement from Columbia for these amounts.

### (3) Conditions of the Columbia policies

The Columbia policies provide that:

> No action shall lie against the Company with respect to any one occurrence unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay an amount of ultimate net loss in excess of the retained limit shall have been fi-

---

cess insurance carrier was not required to extend coverage to an amount for which its insured had "bargained to become a self insurer." 385 N.E.2d at 452 (citing *Ryder Truck Lines, Inc. v. Carolina Casualty Ins. Co.,* 372 N.E.2d 504, 511 (Ind.App.1978)). *See also Zurich Ins. Co. v. Heil Co.,* 815 F.2d 1122 (7th Cir.1987) (in which the court held that under Wisconsin law the terms of the policy in controversy did not obligate an excess liability insurance carrier to assume responsibility for providing primary coverage in the event of the insolvency of the underlying carrier).

nally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company. . . .

Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.

Settlement Agreement at 9 and 10. This section of the policies sets forth two conditions precedent to Columbia's liability including (1) Federal Press' obligation to comply with the terms of the policies and (2) the final determination of ultimate net loss by judgment after an actual trial or written agreement. The section further plainly states that Federal Press' bankruptcy or insolvency will have no effect upon Columbia's obligations under the policies.

Reviewing the provisions in the Columbia policies concerning Federal Press' retained limit, payment of defense costs, and conditions applicable to coverage and duties, the court concludes that the unambiguous language of the policies requires Federal Press to pay judgments, settlements and defense costs up to the amount of its retained limit, to defend matters brought against it which are covered by the policies subject to Columbia's right to become involved in the defense and to recommend settlement of claims which may involve liability in excess of Federal Press' $300,000 retained limit, to cooperate in all matters pertaining to claims or proceedings covered by the policies, to obtain the consent of Columbia prior to settling matters in excess of its self-retained limit, and to comply with all the terms of the policies. Columbia in turn must indemnify Federal Press for ultimate net losses covered by the policies in excess of Federal Press' retained limit up to the amount of its coverage for each policy year, reimburse Federal Press for its excess defense costs subject to the limit of its liability, and perform its obligations under the policies regardless of Federal Press' bankruptcy or insolvency.

■ In this case the dispute between the parties arises not from an ambiguity in the language used in the policies but from two provisions which seem to contradict one another thereby creating ambiguity in the

policies' meaning. The provision requiring that Federal Press comply with all of the terms of the policies as a condition precedent to Columbia's liability apparently conflicts with the provision stating that Federal Press' bankruptcy or insolvency shall not relieve Columbia of any of its obligations under the policies. In resolving this conflict, the court construes the provisions in favor of Federal Press and interprets the policies to further the policies' purpose of indemnity. The court thus concludes that Federal Press and Columbia intended for Federal Press to fulfill all of its obligations under the policies as a condition precedent to Columbia's liability but for its inability to do so because of its bankruptcy or insolvency. The court further concludes that Federal Press' possible inability to satisfy its retained limit of $300,000 due to its bankruptcy or insolvency does not relieve Columbia of its obligation to indemnify Federal Press. The court believes this result is consistent with Indiana law and the equities of this case.

Ind.Code § 27–1–13–7 requires insurance policies issued in Indiana to contain a provision preventing the insolvency or bankruptcy of the insured from releasing the insurance carrier from liability under the policy and states that if "execution against the insured is returned unsatisfied . . . because of such insolvency or bankruptcy the injured party . . . may bring an action against the insurer for the amount of the judgment not exceeding the amount of the policy." Ind.Code Ann. § 27–1–13–7 (Burns 1986). One commentator sets forth the background behind this and similar statutes which protect claimants' rights to pursue insurers in the event of an insured's insolvency or bankruptcy:

In its original form, liability insurance was an agreement by an insurer to indemnify an insured against loss arising as a consequence of an insured's tort liability to a third person. As the relationship of the liability insurer to the insureds and the injured persons was originally structured, even after obtaining a tort judgment against an insured an injured victim was not entitled to proceed against the insurer when the in-

sured either could not pay or did not pay. If the injured person sought payments directly from the insurer, the insurer could defend successfully because its obligation was only to the insured.... The obvious inequity of such situations led to legislation in some states requiring that liability insurance contracts include a provision to the effect that the insolvency or bankruptcy of an insured shall not release an insurer from liability.

Keeton, *Insurance Law* § 4.8(b) at 377–78 (1988). The court thus concludes that Ind. Code § 27–1–13–7 embodies the public policy of permitting an injured victim to recover under a valid insurance policy from the insurer itself in the event the insured is unable to pay due to its insolvency or bankruptcy. In this case the parties satisfied the requirements of Ind.Code § 27–1–13–7 by including such a provision in the Columbia policies. They thus contemplated that Columbia would not be able to avoid its obligations under the policies solely due to Federal Press' insolvency or bankruptcy.

The court recognizes that under Indiana law Columbia may be relieved of its liability under the policies if Federal Press' failure to comply with the terms of the policies resulted in prejudice to Columbia. Unfortunately, though, the parties have presented no case law and the court is unable to locate any cases which discuss whether this rule applies in the event the prejudice is caused by the insured's insolvency or bankruptcy. The court believes, however, in light of the important public policy behind the provision stating that the insolvency or bankruptcy of the insured will *not* relieve the insurer of liability as well as the rules set forth in Indiana law for interpreting insurance contracts, that Federal Press' possible inability to satisfy its retained limit of $300,000 due to its bankruptcy or insolvency does not relieve Columbia of its obligation to indemnify Federal Press.

The equities of the case support this finding. First, the court notes that Federal Press fully paid the premiums which were the primary consideration for the Columbia policies. Second, the evidence shows that Federal Press complied with the terms of the policies (except the requirement that it maintain a separate loss fund for the payment of all claims and expenses falling with the retained limit which condition Columbia has waived)[2] until it became insolvent and was no longer able financially to defend the various actions pending against it. In a letter dated July 16, 1985, counsel for Federal Press informed Columbia that the Marion County Superior Court in Indianapolis, Indiana recently had entered judgment against Federal Press in the amount of $850,000.00 in the case of *Brenda Wooten v. Federal Press Company*, Cause No. S382–1442. Plaintiff's Exhibit D to Columbia's complaint. Counsel for Federal Press explained in the letter:

This judgment drastically aggravates a pre-existing cash flow problem which has plagued Federal Press Company in recent years. Debt to Midwest Commerce Banking Company exceeds $700,000, the Internal Revenue Service claims income tax deficiencies in excess of $1,000,000, and Federal Press Company has had repeated difficulty in paying local counsel in its products liability cases in a timely manner. As you may know, there are numerous products liability cases pending across the country, including three uninsured cases. Any one of a number of factors could, at any moment, cause the Company to seek protection under Chapter 11 of the Bankruptcy Act[3], or to close its doors and cease operations altogether.

*Id.* This letter gave Columbia notice of Federal Press' financial problems and its inability to defend the lawsuit pending against it in Pennsylvania and requested that Columbia take steps to retain and pay local counsel.

In effect, in this letter Federal Press admitted its inability to comply with the

---

2. The parties indicate that Columbia waived this condition of the policies in their Settlement Agreement at 12 and 13.

3. The court notes that counsel for Federal Press apparently mistakenly refers to the former Bankruptcy Act rather than the Bankruptcy Code under which Federal Press properly has brought its petition.

terms of the policies and candidly informed Columbia of the situation in order to prevent possible prejudice to Columbia. At this point Columbia became aware of Federal Press' financial problems and could have taken steps to avoid prejudice to itself. Shortly thereafter, on September 3, 1985, Federal Press took the additional step of filing its petition thereby gaining a stay of the actions pending against it and a respite from its obligations under the policies. Federal Press thus insured that no further prejudice would result from the continuation of actions against it. While Columbia may have suffered some prejudice initially when Federal Press became insolvent, the court finds that Federal Press acted prudently in informing Columbia of the problem and filing its petition. The filing of Federal Press' petition alone certainly did not terminate the rights and obligations of Federal Press and Columbia under the Columbia policies although the filing did protect the interests of both Columbia and Federal Press by enabling Federal Press to address its financial problems and the actions filed against it systematically apart from pre-bankruptcy pressures.

Finally, the court cannot ignore the fact as evidenced by Ind.Code § 27-1-13-7 that insurance policies are meant to protect possible third party claimants as well as the insured. In this case if Columbia is relieved of its liability under the policies due to Federal Press' failure to comply with certain provisions therein, the many claimants who have brought actions against Federal Press possibly will have no means of recovery in the event they are successful despite the fact that Federal Press took the precaution of obtaining insurance to cover losses such as those the claimants have suffered. Reviewing the evidence submitted by the parties, the court concludes that neither Federal Press nor Columbia is relieved of its obligations under the Columbia policies. Columbia has suffered no substantial prejudice due to Federal Press' failure to comply with the terms of the policies. Moreover, the evidence shows that any failure of compliance on Federal Press' part resulted directly from its insolvency and bankruptcy rather than unrelated causes. The court thus finds that Columbia should not be relieved from its obligations under the Columbia policies.

The court further concludes that Federal Press is not automatically relieved of its obligations under the Columbia policies simply because it has filed its Chapter 11 petition. The court does not have sufficient evidence before it at this time to determine to what extent Federal Press may have exhausted its retained limit of $300,000 or to address whether Federal Press will be required to satisfy this limit within its Chapter 11 plan or in a possible liquidation. In addition, the court recognizes that Federal Press still has the duty under the policies to defend the lawsuits pending against it subject to Columbia's reimbursement for costs exceeding $300,-000 albeit the more sensible and economic approach might be for Columbia to exercise its right to defend the lawsuits itself. While these actions temporarily are stayed, the court contemplates their trial in the district court within a fairly short period of time. The court notes that at the last hearing on this matter the parties informed the court that Federal Press in fact may be taking steps to liquidate rather than to follow through with reorganizing. This change in the course of events certainly hampers the court's ability to determine Federal Press' financial situation at this time and to finally adjudicate the extent to which Federal Press may be required to comply with the terms of the policies. The court thus limits its ruling with respect to the Columbia policies concluding that the policies are valid and that both parties have continuing rights and obligations thereunder notwithstanding the fact that Federal Press has filed its Chapter 11 petition.

c. *Rights and obligations under the Centaur and Forum Policies*

The Centaur policies provide that Centaur will pay Federal Press' ultimate net loss for personal injury, property damage, advertising liability, and the products and completed operations hazard in excess of the limits of underlying insurance policies up to a limit of $10,000,000 for the policy

years of 1983 and 1984. Settlement Agreement, Exhibits D and E ("Exhibits D & E"). The policies further state that Centaur will defend any suit against Federal Press alleging liability under the policies and will reimburse Federal Press for all reasonable expenses incurred in attending trials and hearings at Centaur's request. Exhibits D & E at 1. Endorsement 8 to the Centaur policies states:

> In consideration of the premium charged, it is hereby understood and agreed that such coverage as is afforded by the policy shall not apply to PERSONAL INJURY or PROPERTY DAMAGE arising out of the PRODUCTS AND COMPLETED OPERATIONS HAZARD, unless such liability is covered by valid and collectible underlying insurance as listed in the Schedule of Underlying Insurance, for the full limits shown therein, and then only for such hazards for which coverage is afforded under said underlying insurance.

*Id.* at 10.

Endorsement 8 and other provisions within the policies clearly indicate that the parties intended for Centaur to be an "excess" insurance carrier which would not become liable to provide the coverage set forth in the policies unless valid underlying insurance exists. In this case, as the court has concluded that the Columbia policies are valid notwithstanding Federal Press' insolvency and bankruptcy, and Columbia is obligated under the terms of the policies, the court now finds that the Centaur policies also are valid and that Centaur and Federal Press are not relieved from their obligations thereunder.

Similarly, the court concludes that the Forum policy is valid notwithstanding Federal Press' insolvency and bankruptcy. Under the Forum policy Forum agreed to provide comprehensive catastrophe liability coverage in excess of that provided by underlying insurance to a limit of $1,800,000 for 1985.[4] Settlement Agreement, Exhibit F at 5. The policy provides that Forum's

liability will not attach unless and until the limits of underlying policies of insurance have been paid. *Id.* at 3. As Columbia's policy for 1985 is effective pursuant to its terms, the court finds that Forum is not relieved of its obligations under the Forum policy.

2. *Executory/non-executory nature of the policies*

Title 11 U.S.C. § 365(a) states that "[e]xcept as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract ... of the debtor." 11 U.S.C. § 365(a) (Callaghan 1988). Congress has not defined the term "executory contract" but the legislative history to § 365 provides that the term "generally includes contracts on which performance remains due to some extent on both sides." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977) and S.Rep. No. 95–989, 95th Cong., 2d Sess. 58 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5844, 5963, 6303. More specifically, case law holds that a contract is executory when " 'the obligation [sic] of both the [debtor] and the other party to the contract are so far unperformed that the failure to complete performance would be a material breach excusing performance of the other.' " *In re Crippin and Bruce,* 877 F.2d 594, 596 (7th Cir.1989) (quoting *Bankers Trust Co. v. Gibbons (In re Chicago Rock Island & Pacific R. Co.),* 604 F.2d 1002, 1004 (7th Cir.1979) (quoting Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 469 (1973))). *See also NLRB v. Bildisco and Bildisco,* 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984).

An insurance contract is considered to be an executory contract if the contract imposes upon both the debtor and the insurance company continuing duties to perform. *In re B. Siegel Co.,* 51 B.R. 159, 161 (Bankr.E.D.Mich.1985). On the other hand, if an

---

**4.** Forum's limit of liability under the policy is $1,000,000 over and above Columbia's $800,000 limit of liability.

insurance contract is expired at the time of the filing of the debtor's petition in bankruptcy and the debtor has only the duty to pay for retrospective premiums, the contract is not executory. *In re Wisconsin Barge Line, Inc.*, 76 B.R. 695, 697 (Bankr. E.D.Mo.1987) (citing *In re Placid Oil Co.*, 72 B.R. 135, 137–38 (Bankr.N.D.Tex.1987) (omitting citations)). *See also In re Greater Kansas City Transp., Inc.*, 71 B.R. 865, 870 (Bankr.D.Kan.1987) (citing *City of Valdez, Alaska v. Waterkist Corp. (In re Waterkist Corp.)*, 775 F.2d 1089 (9th Cir.1985) and *Hazen v. Hospitality Associates, Inc. (In re Hospitality Associates, Inc.)*, 6 B.R. 778 (Bankr.D.Or.1980)). Hence, § 365 will not apply "[i]f the contract has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case," because the trustee will have nothing to assume or reject. 2 Collier on Bankruptcy § 365.02 at 365–14 (15th Ed.1988). *See also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1212 (7th Cir.1984). The termination process, though, must be complete and not subject to reversal in order for the trustee to lose his right to reject or accept a contract. *Id.*

The court in *In re Greater Kansas City Transp., Inc.*, 71 B.R. 865 (Bankr.D.Kan. 1987), dealt with a situation similar to the one at hand wherein the debtors agreed to maintain a retained limit of $25,000 under an insurance policy and the insurance company agreed to provide coverage above the retained limit. The insurance policy in controversy had terminated on its face on March 1, 1983, three months before the debtors filed their petition under the Bankruptcy Code. Based on these facts the bankruptcy court found that no executory contract existed because on the date of the filing of the petition there was no existing contract to assume or reject. *Id.* at 870 (citing therein *In re Waterkist Corp.*, 775 F.2d 1089 (9th Cir.1985); and *In re Hospitality Associates*, 6 B.R. 778 (Bankr.D.Or. 1980)). On appeal the district court affirmed the holding of the bankruptcy court finding no support for the appellant's proposition that continuing obligations under the expired insurance contract "rejuvenate[d]" the contract thereby making it possible for the contract to be executory. *Guaranty National Ins. Co. v. Greater Kansas City Transp., Inc.*, 90 B.R. 461, 463 (D.Kan.1988). In turn, if the period covered by the insurance policy were in effect, the contract would have been executory. *See In re B. Siegel Co.*, 51 B.R. 159 (Bankr.E.D.Mich.1985). The court agrees with the rationale of these cases and determines as a general rule that if an insurance policy has expired or been terminated on the date of the filing of the debtor's petition, the contract is no longer executory.

■ In this case Federal Press filed its petition on September 3, 1985, after the policies issued by Columbia and Centaur for 1983 and 1984 had lapsed. The court notes that the policies issued by Columbia and Forum for 1985 state that they were to begin on January 1, 1985, and end on January 1, 1986. A handwritten note on the Columbia policy which is attached as Exhibit C to the Settlement Agreement indicates that this policy was cancelled on May 21, 1985. As the cancellation date corresponds to the final effective date of the Columbia and Forum policies set forth by the parties in the Settlement Agreement, the court concludes that the policies in effect were terminated on this date. Federal Press, therefore, had no existing contracts to assume or reject on the date of the filing of its petition. The court concludes, though, that while the executory contract period ended when the last effective date for the policies passed, the terms and conditions of the policies are still in effect for the periods covered by the policies since the failure of any of the parties to complete performance would not constitute a material breach which would excuse the performance of any other. Importantly, Federal Press already has performed its major responsibility under the policies, i.e., that of paying the premiums. Although its failure to comply with other conditions of the policies may or may not subject it to damages for a possible breach of contract, the court concludes that such a breach would not excuse Columbia from liability under the policies. The court therefore finds the insurance policies in controversy herein are not exec-

utory contracts and accordingly denies Columbia's motion to require Federal Press to assume or reject the contracts.

The court holds, however, that even if the Columbia policies were to be considered to be executory in nature due to the corresponding obligations which Columbia and Federal Press owe to one another thereunder, rejection of the policies would be inequitable in this case. The court believes that, inasmuch as Federal Press has fully paid its premiums under the policies and fulfilled its duties insofar as possible prior to its insolvency and bankruptcy, excusing Columbia from liability under the policies would result in a windfall to Columbia, Centaur and Forum to which the insurance companies would not have been entitled but for Federal Press' insolvency and bankruptcy. Such a result would be unfair and severely detrimental to Federal Press, its creditors, and the many tort claimants who are seeking recovery from Federal Press.

### Conclusion

WHEREFORE, the court finds that the insurance policies in dispute are valid and that the parties thereto have continuing rights and obligations under the policies notwithstanding the fact that Federal Press has filed its Chapter 11 petition and has been unable to comply with certain terms of the policies. The court dismisses with prejudice Transport Indemnity Insurance Company as a defendant in Adversary Proceeding 85–3159 due to the fact that it did not issue any liability insurance policies to Federal Press during the years 1983, 1984 and 1985. The court further determines that as the last effective date for the policies had expired when Federal Press filed its petition and the parties have no continuing duties to perform thereunder which if not performed would excuse the performance of any party, the insurance policies are not executory contracts. The court holds, however, that even if the policies were found to be executory, rejection of the policies would be inequitable in this case. The court accordingly denies Columbia's motion to require Federal Press to assume or reject executory contracts which was filed in the debtor's main case. It is

SO ORDERED.