**In re HENDERSONVILLE BOWLING CENTER, INC., Debtor and Debtor-In-Possession.**

**Bankruptcy No. B82–03570.**

United States Bankruptcy Court, M.D. Tennessee, Nashville Division.

Oct. 17, 1986.

## MEMORANDUM OF OPINION

JOHN F. RAY, Jr., Chief Judge.

On November 2, 1982, Hendersonville Bowling Center, Inc. ("Hendersonville") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On the same date, Hendersonville also filed an application for appointment of a trustee to assist in the operation of a bowling alley located in Hendersonville, Tennessee.

On November 12, 1982, Irwin A. Deutscher ("Deutscher") was appointed trustee of Hendersonville.

On March 21, 1984, Deutscher filed an application for the allowance of fees and administrative expenses, nunc pro tunc, for the period of November 12, 1982 through November 30, 1983.

At the time Deutscher was appointed trustee of Hendersonville on November 12, 1982, he was also trustee in at least seven other Chapter 11 cases, carried on a private financial consulting business and acted as an examiner in many other Chapter 11 cases.

Hendersonville, through its president and sole shareholder, James D. Holder ("Holder"), objected to the allowances of fees and also objected to the application nunc pro tunc for payment of administrative expenses.

Hearings on the application for fees and payment of administrative expenses were held before the Honorable George C. Paine, II, United States Bankruptcy Judge for the Middle District of Tennessee, on March 26, May 2, June 15, September 11 and October 10, 1984.

On March 27, 1986, Judge George C. Paine, II and Judge Keith M. Lundin, of the Middle District of Tennessee, put an order on to disqualify themselves from hearing any further matters in this proceeding. On April 21, 1986, the Honorable Pierce Lively, Chief Judge of the United States Circuit Court of Appeals, Sixth Circuit, designated and assigned the Honorable John F. Ray, Jr., Chief United States Bankruptcy Judge for the Northern District of Ohio, to handle the litigation concerning the case of Hendersonville Bowling Center, Inc.

The matter is before this Court on Deutscher's application for fees and payment of administrative expenses nunc pro tunc, and the transcripts of the proceedings held before the Honorable George C. Paine, II.

The attorneys for the parties have agreed that the question of payment of fees and administrative expenses should be submitted to this Court without further hearing on Deutscher's application for payment of fees and administrative expenses, on the basis of the information before the Court, namely the application and transcripts of proceedings held before Judge Paine.

### Applicable Law and Comments

Section 330 of the Bankruptcy Code (11 U.S.C. § 330) provides as follows:

*Compensation of officers.*

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Bankruptcy Code section 503(b)(2) characterizes these awards as administrative expense. 11 U.S.C. § 503(b)(2). Bankruptcy Rule 2016 requires that applications for fees and reimbursement detail: (1) the services rendered, time expended and expenses incurred; and (2) the amounts requested.

Section 326 of the Bankruptcy Code (11 U.S.C. § 326) entitled "Limitation on Compensation of Trustee" provides, in part:

(a) In a case under chapter 7 or 11 [11 USCS §§ 701 et seq., 1101 et seq.], the court may allow reasonable compensation under section 330 of this title [11 USCS § 330] of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, *upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor,* but including holders of secured claims. (emphasis added)

Bankruptcy Code section 326 sets forth the maximum compensation payable to a trustee.

Section 503 of the Bankruptcy Code (11 U.S.C. § 503), entitled "Allowance of Administrative Expenses" provides, in pertinent part:

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title [11 USCS § 502(f)], including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

. . . .

(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title [11 USCS §§ 901 et seq. or 1101 et seq.], based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title [11 USCS §§ 1 et seq.].

■ Under section 503, the one seeking allowance of administrative expenses has the burden of showing that the expenses were reasonable, necessary and benefited the estate.

*Discussion*

■ Deutscher maintained a staff to assist him in the operation of his accounting and financial consulting business. When he was appointed trustee in Chapter 11 cases, he would transfer one or more of his employees from his payroll to that of the Chapter 11 case, and cause that Chapter 11 case to pay the salary, social security, insurance, sick leave, vacation time, mileage and monthly parking fees for those employees, even though the employee or employees did not work full time on that particular Chapter 11 case.

Deutscher also took all of his overhead for the maintenance of his office, namely office rent, monthly rental for computers, typewriters, word processors, copy machines, library, delivery costs, receptionist, his personal secretary, employee benefits such as sick leave and vacation pay, employee parking, employment agency fees

and postage, and prorated them among only the Chapter 11 cases in which he was acting as trustee, even though he was acting as an examiner or financial consultant in other bankruptcy cases and provided services for private clients.

Deutscher made loans, payments, advances and transfers among the various estates in which he served as a fiduciary, without authorization of the Court. He also employed corporations to perform services on behalf of Hendersonville without authorization of the Court.

The same day that Deutscher was appointed trustee in the Hendersonville Chapter 11 case, he employed Continental Enterprises, Inc., without Court approval, to inventory the premises, pick up daily deposit slips from Hendersonville and deliver them to him, observe the operation of the bowling alley and observe whether or not Hendersonville was adequately maintaining the equipment. Continental Enterprises, Inc. was employed from November 12, 1982 through May 14, 1983, and for those services was paid $13,145.46 by Deutscher without Court approval. (See Ex. VI attached to Deutscher's fee application.)

In July, 1983, Deutscher hired Accountemps of Nashville, Tennessee, without Court approval, to furnish temporary accountants to service the Chapter 11 cases in which he was trustee. Between July 26, 1983 and October 18, 1983, Accountemps was paid out of Hendersonville's funds the sum of $4,825.00, but was used in other estates in which Deutscher was trustee. (June 15, 1984 Tr. pp. 43–44) Subsequently, other Chapter 11 estates on which Accountemps was used reimbursed Hendersonville. (See Ex. III attached to Deutscher fee application.)

All of Deutscher's overhead expenses, rent, telephone, equipment rental, postage meter, photocopying, typewriters, computers, word processors, employee wages, employee FICA and FUTA taxes, employee sick and vacation time, other employee benefits, parking fees, messenger services, employment agency fees, and maintenance of

library and office supplies were charged to eight of the Chapter 11 cases pro rata in which Deutscher was acting as trustee, without regard to actual use. (September 11, 1984 Tr. pp. 31, 35) Between November 12, 1982 and November 11 1983, Hendersonville directly or indirectly paid $4,291.83 of Deutscher's cost of supplies and expenses (see Ex. 2 attached to Deutscher's fee application), and further paid Deutscher through one or more of the Chapter 11 cases of which he was trustee the sum of $31,750.48 (see Ex. IV attached to Deutscher's fee application), allegedly for accounting and financial services rendered by Deutscher employees or employees assigned by Deutscher to other Chapter 11 cases in which he was trustee and charged to Hendersonville. The total cost of the services furnished by Continental Enterprises, Inc., as well as costs of office supplies and expenses and accounting and financial services paid by Hendersonville for the period November 12, 1982 through November 11, 1983, amounted to $49,088.13 for an average of $4,090.77 per month.

Holder testified that since confirmation of Hendersonville's plan of reorganization, he has employed a company known as Corporate Assistance to perform the same services that Deutscher had been performing as trustee, and the cost to him is $500.00 to $800.00 per month (May 2, 1984 Tr. pp. 12, 13).

From the very commencement of his role as trustee on November 12, 1982 through November 30, 1983, Deutscher, directly or indirectly, paid substantial sums to himself out of Hendersonville's estate as reimbursement of expenses. He paid himself directly by transferring employees from his payroll to Hendersonville's payroll, and caused Hendersonville to pay the employees' salaries, FICA, FUTA, parking, vacation and sick pay, insurance and other benefits. He was paid indirectly by causing one of his other Chapter 11 cases to invoice Hendersonville monthly for accounting and financial services, and they in turn paid him. He further invoiced Hendersonville monthly for "office expenses" which consisted of charges for his office rent, telephone, photocopies, taxes and office supplies. Not one of these reimbursements was authorized by the Court.

In the administration of the Hendersonville estate and the other Chapter 11 estates in which he was trustee, Deutscher made loans, payments, advances and transfers among the various estates which he served as trustee, without authorization of the Court and out of the ordinary course of business.

A review of Exhibit II attached to Deutscher's application for fees shows that beginning November, 1982 through November 1983, Hendersonville was billed monthly for "office expenses" which consisted of charges for telephone, photocopies, taxes and office supplies, for a total expenditure of $4,291.83 for the period. Other than the general description, there is no breakdown or explanation whatsoever for the charges.

Exhibit IV, attached to Deutscher's application for fees, shows requests by other Chapter 11 debtors being handled by Deutscher for checks to reimburse them for "accounting and financial services" furnished by their personnel to Hendersonville. The requests for the period November 2, 1982 through February, 1983 have only a list of names attached, showing purported time worked, their hourly rate and the total charge per individual. Nowhere is there shown the nature or extent of their work. Beginning in March, 1983, Deutscher attached to each request supporting data showing the name of the employee used and the time worked for Hendersonville, and described the services rendered. The exhibit for the period March 1, 1983 through March 31, 1983, prepared for Blanton Smith Corporation and totaling $484.08, alleges that one Sharon Smallwood expended 60.25 hours doing accounts payable manually. The exhibit for River Merchandising, Inc. for the same period shows that one Gloria Goins expended 14.75 hours doing accounts payable. It is difficult for this Court to be convinced that 75 hours could be expended on accounts payable for

the operation of a bowling alley in one month, when Holder's testimony was that during the period November, 1982 through November, 1983, a total of 2,000 checks was written by Deutscher, averaging out to about 157 checks per month, of which half were for payroll and written on a computer. (See May 2, 1984 Tr. pp. 6 and 7.)

Another exhibit attached to River Merchandising, Inc.'s request for $1,043.91 for the use of its personnel for the period March 1 through March 31, 1983 shows that one Gloria Goins, bookkeeper, expended 95.13 hours doing bookkeeping for Hendersonville without any explanation of the nature or extent of the work performed, or that the purported services rendered were necessary.

All of the supporting data contained in Exhibit IV attached to Deutscher's fee application and the testimony offered in support of his application fail to adequately identify the nature and extent of the services rendered, and fail to show the cost of comparable services.

A trustee, particularly one appointed by the Court, occupies a position of public trust. The estate for which he is given responsibility is being administered by him under Court authority. In taking unauthorized funds from the estate and converting them to his own use, causing the estate to employ individuals and corporations without court authorization, and making inter-estate loans, payments, advances and transfers without Court approval, Deutscher committed a grave breach of fiduciary obligation.

There is no way this Court can determine if Deutscher's allocation of office expenses and accounting and financial services between the Chapter 11 cases of which he was trustee was accurate, reasonable and/or necessary, unless and until an audit were to be had of not only this estate but of all other Chapter 11 estates in which he was trustee.

Deutscher has failed to demonstrate to this Court that the services purportedly rendered Hendersonville were actual and necessary services rendered by him, or that the costs of same were comparable for similar services rendered other than in a case under the Bankruptcy Code.

The Court may deny all compensation to the trustee, since any award is within the Court's discretion. *See, e.g., Dickinson Industrial Site v. Cowan*, 309 U.S. 382, 60 S.Ct. 595, 84 L.Ed. 819 (1940). Statutory authority for the disallowance of fees and reimbursement of expenses is found in section 326 of the Bankruptcy Code (11 U.S.C. § 326).

The application of Deutscher for allowance of trustee's compensation in the amount of $12,790.18 and the allowance of fees and expenses, nunc pro tunc, is denied.