**GUARANTY NATIONAL INSURANCE COMPANY, Appellant,**

v.

**GREATER KANSAS CITY TRANSPORTATION, INC., Yellow Cab of Kansas City, Inc., M–C, Inc., d/b/a American Cab Co., Toedman Cabs, Inc., Koontz Aviation, Inc., Debtors.**

Nos. 87–2138 to 87–2142.
Bankruptcy Nos.
83–20618–11—83–20621–11
and 83–20538–11.

United States District Court,
D. Kansas.

May 18, 1988.

**462**

Benjamin L. Burgess, Jr., U.S. Atty., Julie Robinson Trice, Asst. U.S. Atty., Kansas City, Kan., for the U.S.

Patrick Earl Schmitt, Cheryl Jeanine Schmitt, Princeton, Kan., Kansas State Bank, Larry V. Bailey, Ottawa, Kan., pro se.

Ernest N. Yarnevich, Kansas City, Kan., Frank Wendt, Slagle & Bernard, P.C., Kansas City, Mo., for Guaranty Nat'l Ins. Co.

Carol A. Park, U.S., Trustee, Wichita, Kan.

Thomas M. Mullinix, Evan & Mullinix, P.A., Kansas City, Kan., for debtors.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on an appeal by Guaranty National Insurance Company ("Guaranty" or "appellant") from a decision of the United States Bankruptcy Court for the District of Kansas, denying appellant's application for an administrative expense claim. The court has determined that oral argument would not be of material assistance in this matter. D.Kan. Rule 206(d).

The standard of review for a bankruptcy appeal is found in Bankruptcy Rule 8013, which provides in pertinent part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." The clearly erroneous standard does not apply, however, to the bankruptcy court's conclusions of law. Instead, legal determinations of the bankruptcy court are reviewed *de novo.* *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399–400 (10th Cir.1986). Pursuant to the preceding authority, the court finds that the bankruptcy court's findings of fact are not clearly erroneous, and thus adopts and incorporates by reference the bankruptcy court's findings as presented in its Memorandum Opinion and Order of March 16, 1987.

Appellant raises two issues for appeal: (1) Does a claim, deemed allowed pursuant to section 502 of the Bankruptcy Code, automatically become an administrative expense priority claim when the creditor characterizes the claim as one for administrative expenses and the party in interest does not make an adequate objection to the claim's characterization as an administrative expense? and (2) Regardless of the answer to the first issue, is appellant's claim entitled to administrative expense priority? The claim which is the subject of this appeal arose from appellant's performance under pre-petition liability insurance contracts, issued by appellant and held by the debtors. Appellant alleges that its post-petition costs of administering these insurance contracts are entitled to an administrative priority, and therefore argues that the bankruptcy court erred in concluding that these costs were an unsecured claim against debtors. After careful consideration, this court has determined that the bankruptcy court committed no error. Thus, its decision will be affirmed.

As to the first issue, appellant essentially argues that because no parties in interest objected to the validity or amount of the claim, appellant's claim must be allowed under section 502(a) *as claimed, i.e.,* as an administrative priority expense. Appellant offers no authority for the proposition that the creditor, rather than the Bankruptcy Court, has authority to determine a claim's priority status. Indeed, such a proposition is contrary to the Code's language and defies common sense. Section 503 of the Bankruptcy Code governs the allowance of administrative expenses. The

section provides that an entity may *request* that a claim be paid as an administrative expense, *see* 11 U.S.C. § 503(a), and that administrative claims falling within the parameters outlined in section 503(b) will be allowed *after notice and hearing.* The Code's language clearly indicates that parties request the court to grant their claims administrative expense priority; they do not dictate claim priorities to the court. *See, e.g., In re Dakota Industries, Inc.,* 31 B.R. 23, 26 (D.S.D.1983) ("The court has broad discretion in determining whether a claim should be entitled to administrative priority."). Furthermore, if creditors were allowed to determine their claims' priorities simply by characterizing them as administrative expenses or as some other preferred claim, the Code's priority scheme (*see* 11 U.S.C. §§ 725, 726, 507) would be useless. Appellant's contentions to the contrary are illogical, unreasonable, and not worthy of further discussion.

The second issue raised on appeal is whether appellant's claim is entitled to administrative priority pursuant to section 503(b)(1)(A) as "actual, necessary costs and expenses of preserving the estate." Appellant argues that the insurance contracts on which its claim is based are executory contracts, that the debtors assumed these contracts by accepting benefits deriving from the contracts, and thus that the liability claims appellant paid pursuant to these insurance contracts are administrative expenses which deserve priority under section 507(a)(1). Appellant's argument fails for two reasons. First, the insurance contracts were not executory. Second, appellant's claim does not fit within the parameters of an administrative expense, as defined in section 503(b)(1)(A).

■ An executory contract is generally defined as a contract under which " 'the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.' " *In re Pacific Express, Inc.,* 780 F.2d 1482, 1487 (9th Cir.1986) (quoting Countryman, "Executory Contracts in

Bankruptcy: Part I," 57 Minn.L.Rev. 439, 460 (1973)). This definition, as well as section 365, which governs how executory contracts are handled in a bankruptcy, assumes that a contract is in existence at the time bankruptcy is filed. In the present case, the last insurance policy terminated by its own terms on March 1, 1983, three months *prior* to the debtors' filing bankruptcy. Consequently, no contracts were in existence at the time the debtors filed bankruptcy, and the debtors could neither assume nor reject nonexistent contracts. *See In re Data Concepts International, Inc.,* 73 B.R. 406, 414 (D.Mass.1987); *In re Best Film & Video Corp.,* 46 B.R. 861, 869 (E.D.N.Y.1985).

Appellant contends that the continuing obligations under the admittedly expired insurance contracts created an executory contract. Appellant cites no support for its conclusion that contract obligations which are incurred during the contract period, but which are performed after the contract terminates, rejuvenate a contract that has expired prior to the time a debtor files bankruptcy. The court also has been unable to find support for such a proposition. There being no contracts in existence when the debtors filed bankruptcy, there can be no executory contracts to assume or reject during debtors' bankruptcy proceedings.

■ As the Bankruptcy Court correctly concluded, the essential issue appellant raises can be stated as follows: Are Guaranty's *post-petition* payments of *pre-petition* claims administrative expenses under section 503(b)(1)(A)? In order for a claim to be entitled to administrative expense priority under section 503(b)(1)(A), "it must be predicated on a debt incurred (1) for the actual and necessary costs of preserving the estate and (2) after the commencement of the case." *In re John Clay & Co., Inc.,* 43 B.R. 797, 807 (D. Utah 1984). Additionally, the claim must arise from a transaction with the debtor-in-possession, a benefit must be conferred on the debtor-in-possession's business, and the debtor-in-possession must have induced the creditor's performance. *See Matter of Jartran,* 732 F.2d 584, 587 (7th Cir.1984); *In re Mam-*

*moth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976); *In re Cascade Oil Co., Inc.*, 51 B.R. 877, 881 (D.Kan.1985). Finally, a claim must comport with the underlying purposes of section 503, which is to encourage the post-petition extension of credit to debtors to enable them to continue operating their businesses. As the Seventh Circuit explained:

> If a reorganization is to succeed, creditors asked to extend credit after the petition is filed must be given priority so they will be moved to furnish the necessary credit to enable the bankrupt to function.... Without a provision like § 503, efforts to reorganize would be hampered by the necessity of advance payment for all goods and services supplied to the estate since presumably no creditor would willingly assume the status of a non-priority creditor to a debtor undergoing reorganization.

*Jartran*, 732 F.2d at 584. Applying the above requirements to the case at hand, the court concludes appellant's claim is not entitled to an administrative expense priority.

First, appellant's claim did not arise after the commencement of the bankruptcy case (*i.e.*, post-petition). Although appellant paid the liability claims post-petition, those claims accrued pre-petition. "Generally, debts which accrue prior to the bankruptcy proceeding are not administrative expenses, even if they are not payable until some date during the proceeding." *Amalgamated Insurance Fund v. William B. Kessler, Inc.*, 55 B.R. 735, 739 (S.D.N.Y. 1985); *accord In re Placid Oil Co.*, 72 B.R. 135, 137–39 (N.D.Tex.1987); *In re Marion Corp.*, 67 B.R. 487, 490 (S.D.Ala.1985); *In re Charter Co.*, 52 B.R. 267, 271 (M.D.Fla. 1985). Thus, appellant's post-petition payments of the pre-petition liability claims do not qualify as administrative expenses.

Second, appellant's claim did not arise from a transaction with the debtors-in-possession. The liability claims appellant paid under the insurance contracts accrued prior to the debtors' bankruptcy and were paid pursuant to contracts which the debtors and appellant executed pre-petition. Thus, appellant's claim arose from a transaction with the debtors as non-bankrupt entities.

Third, appellant's paying the pre-petition liability claims also did not confer a benefit to the debtors-in-possession in the continuing operation of their businesses and was not a necessary cost to preserve debtors' estates. Appellant argues that failure to pay these claims would have resulted in the loss of the taxi cab permits necessary for the debtors to continue in business. Although the court assumes that the debtors must be insured to have operating permits, we fail to see the connection appellant's attempt to draw between its failure to pay claims under terminated insurance contracts and debtor's ability to secure new insurance contracts. The effectiveness of debtors' current liability policies is not dependent on whether appellant meets or fails to meet its obligations under the prior liability contracts. Consequently, appellant's actions produced no benefit for the current operation of debtors' businesses.

As pre-petition tort claims, these claims, left unpaid, would have had the status of an unsecured claim and would have received the appropriate priority. *See In re Marion Corp.*, 67 B.R. at 490; *In re Charter Co.*, 52 B.R. at 271; 11 U.S.C. § 507. By paying these claims, appellant essentially "stepped into the shoes" of these tort claimants, and appellant's claim thus retains the same unsecured status and the same right to priority. As the Bankruptcy Court noted, a third party's paying an unsecured claim does not transform the third party's resulting claim into one deserving administrative expense priority.

Fourth, the debtors did not induce Guaranty to pay the pre-petition accident claims. Indeed, appellant admits that it chose to pay these claims.

Finally, appellant's payments of the liability claims against debtors were not a post-petition extension of credit as envisioned by section 503. As discussed previously, appellant's decision to pay the claims did not contribute to debtors' ability to continue operating their businesses. Rather, these payments simply fulfilled the obli-

gations appellant and debtors assumed under the pre-petition insurance contracts.

In sum, appellant's claim does not come within the parameters of a section 503(b)(1)(A) administrative expense: it did not arise after commencement of the case, it did not arise from a transaction with the debtor-in-possession nor was it induced by the debtors, it conferred no benefit on the estates, it was unnecessary to preserve the estates, and it did not comport with the underlying purpose of section 503. Thus, the Bankruptcy Court correctly concluded that appellant's claim was an unsecured claim rather than an administrative expense.

IT IS THEREFORE ORDERED that the judgment and order of the United States Bankruptcy Court for the District of Kansas, dated March 16, 1987, is affirmed.