550 So.2d 12 (1989)
TRAVELERS INDEMNITY COMPANY, a Corporation of the State of Connecticut, Appellant,
v.
OVERSEAS ACE HARDWARE, INC., a Corporation of the State of Florida; Lig Insurance Agency, Inc., a Corporation of the State of Missouri; and Robert J. Hoffman, Appellees.
No. 88-825.
District Court of Appeal of Florida, Third District.
July 5, 1989.
Rehearings Denied November 9, 1989.
George, Hartz & Lundeen, Daniels and Hicks, Miami, and Angela C. Flowers, for appellant.
Cunningham, Albritton, Lenzi, Warner, Bragg & Miller and Alfred O. Bragg, Marathon, Stephens, Lynn, Klein & McNicholas and Robert M. Klein and Debra J. Snow, Miami, for appellees.
Before NESBITT, BASKIN and GERSTEN, JJ.
GERSTEN, Judge.
Appellant, Travelers Indemnity Company (Travelers), appeals from a final summary judgment granted on behalf of an insured and its insurance agents. We reverse.
Appellee, Overseas Ace Hardware, Inc., (Overseas), purchased a "Catastrophe Umbrella" insurance policy from Travelers. At the time that Overseas purchased the umbrella policy, it was carrying primary automobile insurance within the $500,000 limits prescribed by its contract with Travelers. However, those policies expired and Overseas' insurance agents, Appellees, Lig Insurance Agency, Inc, (LIG) and Robert J. Hoffman, (Hoffman), purchased a policy for the smaller amount of $100,000 per person/$300,000 per occurrence.
Thereafter, an Overseas truck collided with a car. Travelers determined that the negligent actions of Overseas caused the injuries to the car's driver and passenger. Travelers also determined that the injuries received by the driver were aggravated by negligent medical care.
In order to limit its liability, Travelers agreed to settle the claim for $2,000,000 in exchange for the driver pursuing a malpractice suit and crediting Travelers with any monies received from that action. Because of the subsequent malpractice action, Travelers ended up paying $959,678.
Pursuant to a provision in the contract which permitted Travelers to pay the deductible amount and then be reimbursed by the primary carrier or Overseas, Travelers *13 settled the claim and then sought reimbursement from Overseas for the initial $500,000. Because the primary policy paid only $200,000 ($100,000 per person), Travelers looked to Overseas for the difference. Overseas, in turn, filed an action against their insurance agents, LIG and Hoffman for failing to maintain the proper limits in the primary insurance.
LIG and Hoffman asserted that Overseas was actually liable for a smaller amount which was covered by the primary policy and that Travelers settled the claim for the larger amount without authority. LIG and Hoffman argued that if Overseas was not liable to Travelers, they were not liable to Overseas. The trial court then granted motions for summary judgment on behalf of Overseas, LIG and Hoffman.
The contract of "Catastrophe Umbrella" insurance provided that Overseas would maintain the following primary insurance:
The Named Insured is responsible for maintaining in full force and effect during this policy period the policies of primary insurance described below, including their renewals.
The policy then stated that the limits of liability to be maintained in the primary policy were "1,000,000 General Liability, and 500,000 Auto Liability." The policy further provided that the deductible was to be:
the greater of $25,000 each occurrence, or the sum of all valid and collectible primary insurance applicable to the occurrence.
Umbrella or coinsurance policies are designed to provide coverage only when the amount of an insured loss reaches a predetermined level, such as in the event of a catastrophic event. Since their purpose is to protect against catastrophic losses, these policies commonly require that the insured carry primary insurance to cover all other claims. Chicago Insurance Company v. Dominguez, M.D., 420 So.2d 882 (Fla. 2d DCA 1982), review denied, 430 So.2d 450 (Fla. 1983).
Primary insurance can be in the form of a separate policy to cover the deductible limit in the catastrophic policy, or simply self-insurance by the purchaser. In the instant case, the policy is clear and unambiguous that the primary coverage for auto liability is $500,000. Travelers required Overseas to maintain primary auto insurance in the amount of $500,000. To the extent that Overseas did not do so, it became self-insured for that amount.
The deductible amount found in most catastrophic policies is the liability limit of the primary insurance.[1] The required upper liability limit of the underlying insurance, therefore, constitutes the threshold point of liability for the umbrella policy. See, e.g., Garmany v. Mission Insurance Company, 785 F.2d 941 (11th Cir.1986). In this case, because we find no ambiguity in the definition of the deductible, the threshold point of liability for Travelers commences at $500,000. Since the policy empowered Travelers to settle claims and advance sums within the deductible amount, Overseas may now be liable for whatever amounts of this deductible its primary insurance did not cover and may look to its agents for possible indemnification.
Reversed and remanded.
NOTES
[1] For a discussion on the question of what constitutes the deductible in an umbrella policy, see generally R. Keeton & A. Widiss, Insurance Law § 3.11 (1988).