In re PACKARD PROPERTIES, LTD., Debtor.

Bankruptcy No. 387–32807–RCM–7.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

June 26, 1990.

Michael F. Wurst, Dallas, Tex., for trustee.

S. Eric Ragir, Dallas, Tex., for respondent.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON OBJECTION TO CLAIM OF VILLAGES OF BEAR CREEK OWNERS ASSOCIATION

ROBERT McGUIRE, Chief Judge.

Following are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, with respect to the hearing on June 18, 1990.

### Findings of Fact

1. This proceeding relates to the bankruptcy case of Packard Properties, Ltd. ("Debtor"), Case No. 388–33220 RCM–7, pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

2. Debtor filed a voluntary petition under Chapter 11, on April 2, 1987. The case was subsequently converted to Chapter 7 on April 27, 1988. Michael F. Wurst ("Trustee" or "Movant") was appointed trustee on May 4, 1988.

3. Movant is duly qualified and is acting in his capacity as trustee.

4. Villages of Bear Creek Owners Association, Inc. (the "Association") filed claim number 45 and amended claim number 65 for a total of $17,270.65. This amount arose from Debtor's obligation for assessments due to the Association from the filing of bankruptcy until the debtor's ownership interest was foreclosed upon by the holder of the first lien indebtedness on December 1, 1987.

5. In their amended claim, the Association contends that the assessments related to maintenance of common areas and medians within Villages of Bear Creek, as well as providing insurance on the property and managing the property within Villages of Bear Creek.

6. The Trustee objected to the association's amended claim on the basis that it is not enforceable against the Debtor or property of the estate pursuant to 11 U.S.C. § 502(b)(1).[1]

7. Pursuant to Article 4.01 and 4.02 of the "Amended and Restated Declaration of Covenants, Conditions and Restrictions for the Villages of Bear Creek" ("Declara-

---

1. Section 502(b)(1) reads:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the dates of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim in contingent or unmatured;

tion"), the Debtor as an Estate Owner in the Villages of Bear Creek was personally obligated to pay its share of assessments which directly go to funding the maintenance, operation, and upkeep of the planned unit development.

8. The affidavit of Cary Fitzgerald ("Fitzgerald") contains a chart of income and expenditures. The expenditures include such items as insurance, utilities, landscape maintenance and taxes which the Association contends is for the benefit of all of the estate owners. Fitzgerald states in the affidavit that these expenditures were actually incurred by the Association.

### Conclusions of Law

1. At the outset, it must be noted that the proper procedure for presentation of this issue is a request for payment of administrative expenses pursuant to § 503(a), and not a claim objection. Section 501(a) provides that "[a] creditor or indenture trustee may file a proof of claim." A "creditor" is defined in § 101(9) generally as an entity with a pre-petition claim. The Association's claim is for assessments made post-petition. The Court will treat the Association's proof of claim as a § 503(a) request for payment of administrative expenses, particularly in view of lack of objection by the Trustee. A significant difference between a proof of claim and a request for payment of an administrative expense is the placement of · the burden of proof. A proof of claim is *prima facie* evidence of the nature and amount of the debt and the Trustee has the burden to rebut this prima facie evidence. Rule 3001(f). However, allowance of a claim as an administrative expense is subject to court approval only after notice and a hearing. § 503(a). A very similar situation to the present case was addressed in *Matter of Mansfield & Tire Rubber Co., Inc.*, 73 B.R. 735 (Bankr.N.D.Ohio 1987). Since this claim is a request for payment of administrative expenses, the association carries the burden of proof throughout the entire proceeding.

2. The standards which courts use in determining whether an administrative ex-

pense should be allowed are discussed in *In re Butcher,* 108 B.R. 634 (Bankr.E.D.Tenn. 1989), a condominium administrative expense case. At pp. 636 and 637, the court stated:

> The court has broad discretion to determine whether a claim for an administrative expense is, in actuality, an administrative expense. *In re Dakota Indus., Inc.* 31 B.R. 23, 26 (Bankr.D.S.D.1983). Bankruptcy courts should strictly scrutinize claims and narrowly construe the terms 'actual' and 'necessary'. *Matter of Patch Graphics*, 58 B.R. 743, 745 (Bankr.W.D.Wis.1986). *See Grantham v. Eastern Marine, Inc.*, 93 B.R. 752, 754 (Bankr.N.D.Fla.1988); *In re Sinclair,* 92 B.R. 787, 788 (Bankr.S.D.Ill.1988). The burden of proof to demonstrate that the claim is an administrative claim is upon the movant. *Sinclair,* 92 B.R. at 788; *Patch Graphics,* 58 B.R. at 745. The movant must also show 'that the expenses were reasonable, necessary and benefited the estate.' *In re Hendersonville Bowling Center, Inc.*, 65 B.R. 963, 965 (Bankr.M.D.Tenn.1986). The *Patch Graphics* court stated that 'the expense in question must be shown to have been "actual and necessary."' 58 B.R. at 745.

At 108 B.R. p. 638, the *Butcher* court mentions the differences in approach which the various courts have adopted with respect to the creditor's burden of proof in this type of administrative expense case, citing, as contrary approaches, *In re Mishkin,* 85 B.R. 18 (Bankr.S.D.N.Y.1988) and *In re Lenz,* 90 B.R. 458 (Bankr.D.Col.1988).

3. The evidence presented in this case was scant. Attached to the affidavit of Fitzgerald was a list of revenues and expenses for the Villages of Bear Creek. Looking at the list of expenses, it is unclear to the Court how the "supplies", "printing", "architectural review", "legal and audit", "other professional services", "contingencies" and "bad debt expenses" benefited the estate. There was insufficient proof by the creditor that the extensive charges for "management fees" of the Association were of benefit to the estate. One court found that a property owners' association's "... annual assessments caused the lots to

be encumbered in excess of their value. Clearly, there is nothing in the record establishing that the value of the lots was preserved or enhanced by any services performed by the Association...." *In re Moore,* 109 B.R. 777, 784 (Bankr.E.D.Tenn. 1989). However, it appears that the categories of charges for "insurance", "utilities", "cable", "fire alarm monitoring", "landscape maintenance", and "taxes" (the second category of expenses) benefited all estate owners, including the Debtor's estate. The Trustee presented no evidence to challenge these expenditures. The Court holds that the Association met its burden of proof with regards to this second category of expenses.

4. In conclusion, the expenditures made by the Association for insurance, utilities, cable, fire alarm monitoring, landscape maintenance, and taxes are hereby granted status as administrative expenses under § 503(b)(1)(A). The parties are instructed to present to this Court an amount which represents the percentage of the Association's claim against the Debtor for the above expenditures.