In re **FIREARMS IMPORT AND EXPORT CORP.**, a/k/a FIE Corp., Debtor.

**FIREARMS IMPORT AND EXPORT CORP.**, a/k/a FIE Corp., Debtor and Debtor-in-Possession, Plaintiff/Counterdefendant,

v.

**UNITED CAPITOL INSURANCE COMPANY**, Defendant/Counterplaintiff,

v.

Allan **BERNKRANT**, et al., Third–Party Defendants.

Bankruptcy No. 90–18256–BKC–SMW. Adv. No. 91–0308–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Sept. 23, 1991.

David M. Levine, Mara Beth Sommers, Mark Bonacquisti, McDermott, Will & Emery, Miami, Fla., for debtor.

Robert C. Meyer, Robert C. Meyer, P.A. Coral Gables, Fla., William G. Edwards, Nicklaus, Valle, Craig & Wicks, Miami, Fla., for United Capitol.

Herbert Stettin, Miami, Fla.

David Profilet, Miami, Fla.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Chief Judge.

THIS CAUSE came before the Court on August 6, 1991 for trial on the objection of Firearms Import and Export Corporation, debtor and debtor-in-possession ("FIE") to the proof of claim filed by United Capitol Insurance Company ("United Capitol"); FIE's counterclaim to the proof of claim filed by United Capitol; and United Capitol's counter-counterclaim to the action by FIE. Having heard the testimony of witnesses and the arguments of counsel for the respective parties, and having considered the demeanor of the witnesses, the exhibits presented and the remainder of the record in this cause, the Court finds as follows:

### FINDINGS OF FACT

1. At all relevant times, FIE was a Florida corporation lawfully engaged in the manufacture, import, export, and wholesale distribution of firearms. FIE has maintained its principal place of business in Opa–Locka, Florida.

2. On November 8, 1990 (the "petition date"), FIE filed a voluntary petition with the bankruptcy court for relief under Chapter 11 of Title 11 of the United States Code.

3. Since the petition date, FIE has continued in possession of its property as a debtor in possession under 11 U.S.C. § 1108.

4. United Capitol is a corporation organized under the laws of Wisconsin, with its principal place of business in Atlanta, Georgia.

5. At all relevant times, United Capitol has transacted business in the state of Florida as a surplus line carrier pursuant to § 626.913 *et seq.*, Florida Statutes.

6. As a result of FIE's business activities, and the potential liabilities necessarily attendant to such business activities, including specifically (but not limited to) the possibility of various lawsuits asserting "product liability" causes of action, FIE acquired general commercial liability insurance in order to go forward with its business. Such insurance serves to protect not only FIE itself, but also affords the indirect customers of FIE (i.e. retail purchasers) a dedicated source of recovery should they suffer a compensable harm as a result of using a product manufactured, sold or distributed by FIE.

7. In furtherance of this end, and in conjunction with various corporate affiliates of FIE and other entities with whom FIE regularly transacted business, FIE was named as an insured under three commercial general liability occurrence policies (the "Policies")—policies no. GLA 100 0101 (1987 policy); GLA 100 0312 (1988 policy); and GLA 100 0454 (1989 policy). The Policies were issued by United Capitol on or about April 23, 1987, 1988 and 1989 respectively, and provide coverage for claims which arise from occurrences from May 10, 1986 to February 16, 1990. Thus, these Policies, by their own terms, provide coverage for periods which are entirely pre-petition.

8. The Policies (among other things) cover FIE's liability for bodily injury and property damage claims which might be asserted by product liability claimants. Such claims are denominated as "products-completed operations hazard" claims in the Policies.

9. In each coverage year, United Capitol provides one million dollars ($1,000,000.00) products-completed operations hazard coverage for claims in the aggregate, which is excess over the $350,000.00 aggregate self-insured retention (SIR) to be funded by the insureds—$100,000.00 of SIR per claim in policy 100 0101, and $50,000.00 of SIR per claim in policies 100 0132 and 100 0454.

10. All of the Policies contain the following provisions:

*Section IV–Commercial General Liability Conditions*

1. **Bankruptcy**

Bankruptcy or insolvency of the insured [FIE] or of the insured's estate will not relieve us [United Capitol] of our obligations under this coverage part.

2. **Duties In The Event Of Occurrence, Claim Or Suit**

a. You [FIE] must see to it that we are notified promptly of an "occurrence" which may result in a claim. Notice should include:

(1) How, when and where the "occurrence" took place; and

(2) The names and addresses of any injured persons and witnesses.

b. If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

.    .    .    .    .

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

.    .    .    .    .

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

11. Each of the Policies, by its express terms, expired prior to the filing of the bankruptcy petition. Because the Policies are occurrence-based, however, United remains liable for claims arising from a coverage period (subject to any statute of limitations), even if such claim is asserted after the expiration of the respective policy term.

12. Prior to the filing of FIE's Chapter 11 Petition, United Capitol was paid $497,-500.00, $451,950.00 and $451,950.00 in advanced premiums for the 1987, 1988 and 1989 policies.

13. As of the petition date, approximately twenty product liability claims covered by the Policies had been asserted against FIE or its affiliated co-insureds. Since the petition date several more have been asserted.

14. United Capitol received timely notice of the March 20, 1991 claim bar date in FIE's Chapter 11 case.

15. United Capitol filed a Proof of Claim dated March 15, 1991 which denominated the debtor as "F.I.E.", but included the wrong case number. This Proof of Claim was received by the clerk of this Court on March 19, 1991, but was not docketed in the main bankruptcy case until the day of trial (August 6, 1991).

16. United Capitol filed an Amended Proof of Claim, with the proper case number, dated April 15, 1991.

17. FIE filed its Objection of Debtor–In–Possession to Allowance of Claim of United Capitol Insurance Company and Counterclaim for Equitable Subordination and Declaratory Relief on April 22, 1991, which initiated this adversary proceeding. On June 28, 1991 United Capitol filed its Answer to Complaint and Affirmative Defenses, which also asserted various third-party claims and counter-counterclaims.

18. Prior to trial, FIE voluntarily dismissed its Count III for equitable subordination. United Capitol also voluntarily dismissed its Count III, a third-party claim also for equitable subordination (against an insider of FIE), in order to refile it as a separate action.

## CONCLUSIONS OF LAW

### I. *Jurisdiction*

This Court has jurisdiction over the claims at issue in the proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334, 2201 and 2202; § 101 *et seq.* of the Bankruptcy Code; and the order of the United States District Court for the Southern District of Florida referring all cases and proceeding under the Bankruptcy Code in this district to this Court. This is a core proceeding under 28 U.S.C. § 157(b), including, but not limited to, § 157(b)(2)(A), (B), and (C). In their pre-trial stipulation, the parties stipulated to the core status of this proceeding. Venue is appropriate in this district pursuant to 28 U.S.C. § 1409.

### II. *The Policies Are Not Executory*

United Capitol argues that the Policies must be deemed executory contracts and thus subject to the assumption and rejection provisions of § 365 of the Bankruptcy Code. FIE, on the other hand, cites several precedents which it contends demonstrate that the Policies are not executory in nature. Considering both arguments in their totality, this Court concludes that the Policies are not executory contracts and therefore § 365 is inapplicable.

United Capitol relies heavily on *In re Government Securities Corp.*, 101 B.R. 343 (Bankr.S.D.Fla.1989) (Cristol, J.) for the following proposition:

[I]nsurance contracts are *generally* considered executory contracts. Significantly, however, the *sole* basis for the holding that a contract for insurance is an executory contract has been the fact that the bankrupt insured had a continuing obligation to make premium payments under the contract.

*Id.* at 348 (citations omitted) (first emphasis retained; second emphasis added).

United Capitol's reliance on this proposition is doubly misplaced under the facts of this case. First, and most significantly, the precedents cited by FIE conclusively demonstrate that whatever the *general* rule

may be, when dealing with insurance policies and operative facts similar to those at issue here, the courts have held such policies to be non-executory. Second, the "sole basis for the holding that a contract for insurance is an executory contract"—a continuing obligation of the debtor to make premium payments—does not exist in this case.

In a case with facts remarkably similar to this one, *Matter of Federal Press Co., Inc.*, 104 B.R. 56 (Bankr.N.D.Ind.1989), the bankruptcy court held that the insurance policies at issue were not executory contracts. In *Federal Press*, the debtor purchased its primary product liability insurance from Columbia Casualty Company ("Columbia").[1] The policies, like those at issue in this case, required the debtor to fund a specified amount of self-insurance (through an SIR) which would first need to be exhausted before the insurer would have to pay on the policy. *Id.* at 57. Also like this case, the policies required the debtor to notify the insurer of every incident, demand, notice, summons or other process it received which would be reasonably likely to involve a claim against the insurer, and further required the debtor to cooperate with the insurer in making settlements, conducting lawsuits, and enforcing possible rights of contribution or indemnity against third parties. *Id.* The policies also stated that Columbia would not be liable for an occurrence under the policy unless the debtor fully complied with all the terms of the policies. *Id.* at 58. Perhaps most significantly, like the Policies at issue in this case, the policies between Federal Press and Columbia stated that the bankruptcy or insolvency of Federal Press would not relieve Columbia of any of its obligations under the policies. *Id.* It should also be noted that the occurrence-based policies in *Federal Press*, like those at issue in this case, covered periods prior to the filing of the debtor's bankruptcy case. *Id.* at 57.

■ In beginning its analysis of the executory or non-executory nature of the in-

surance policies, the bankruptcy court in *Federal Press* stated the truism that "[a]n insurance contract is considered to be an executory contract if the contract imposes upon both the debtor and the insurance company continuing duties to perform. *Id.* at 65 (*citing In re B. Siegel Co.*, 51 B.R. 159, 161 (Bankr.E.D.Mich.1985)). However, "if an insurance contract is expired at the time of the filing of the debtor's petition in bankruptcy and the debtor has only the duty to pay for retrospective premiums, the contract is not executory." *Id.* at 66 (*citing In re Wisconsin Barge Line, Inc.*, 76 B.R. 695, 697 (Bankr.E.D.Mo.1987); *In re Placid Oil Co.*, 72 B.R. 135, 137–38 (Bankr.N.D.Tex.1987); *In re Greater Kansas City Transp., Inc.*, 71 B.R. 865, 870 (Bankr.D.Kan.1987) *aff'd. sub nom. Guaranty Nat'l. Ins. Co. v. Greater Kansas City Transp., Inc.*, 90 B.R. 461, 463 (D.Kan.1988)).

■ The court in *Federal Press* then applied these well established legal principles to the facts at hand. The debtor, Federal Press, had filed its bankruptcy petition *after* the periods covered by the policies with Columbia, so the policies were deemed to have lapsed. *Id.* at 66. As a result, the debtor "had no existing contracts to assume or reject on the date of the filing of its petition." *Id.* at 66. The court went on to say:

> [T]hat while the executory contract period ended when the last effective date for the policies passed, *the terms and conditions of the policies are still in effect for the periods covered by the policies since the failure of any of the parties to complete performance would not constitute a material breach which would excuse the performance of any other. Importantly, Federal Press already has performed its major responsibility under the policies, i.e., that of paying the premiums. Although its failure to comply with other conditions of the policies may or may not subject it to damages for a possible breach of con-*

---

**1.** Federal Press also purchased additional coverage over and above its coverage with Columbia through two other carriers. These additional

policies were immaterial to the decision in *Federal Press.*

*tract, the court concludes that such a breach would not excuse Columbia from liability under the policies. The court therefore finds the insurance policies in controversy herein are not executory contracts and accordingly denies Columbia's motion to require Federal Press to assume or reject the contracts.*
*Id.* at 66–67 (emphasis added).

The court in *Federal Press* relied considerably on the bankruptcy court and district court opinions in *In re Greater Kansas City Transp., Inc.,* 71 B.R. 865 (Bankr. D.Kan.1987), *aff'd. sub nom. Guaranty Nat'l. Ins. Co. v. Greater Kansas City Transp., Inc.,* 90 B.R. 461 (D.Kan.1988). The *Greater Kansas City* decisions, although dealing with policies and facts not quite as nearly identical to the facts of this case as those in *Federal Press,* also dealt with liability policies containing SIR provisions. *In re Greater Kansas City Transp., Inc., supra,* 71 B.R. at 867. Also, like this case, the liability coverages at issue were for periods exclusively pre-petition. *Id.* at 870. Under such circumstances, both the bankruptcy court and the district court held that, on the day of the filing of the bankruptcy petition, there was no existing contract for the debtor to assume or reject, therefore § 365 was inapplicable. *Id.; Guaranty Nat'l. Ins. Co. v. Greater Kansas City Transp., Inc., supra,* 90 B.R. at 463. This Court, in accordance with the reasoning of *Federal Press* and both decisions in the *Greater Kansas City* cases, concludes that the Policies at issue in this case are not executory contracts.

This Court's conclusion that the Policies are not executory is further bolstered by its observation that the "sole basis" for holding an insurance policy to be an executory contract—the continuing obligation of the debtor to make premium payments—is lacking in this case. United Capitol has been paid in full, over $1.4 million, for premiums due under the Policies. The Policies themselves do not in any way classify the SIR provisions as additional premiums and United Capitol presented no evidence that the parties mutually intended the SIR to be considered such. While United Capitol did present testimony from its vice pres-

ident of underwriting that "we [United Capitol] view a self-insured retention as another form of premium" (Trans. at p. 44), such self-serving testimony must carry little weight with this Court. United Capitol's after-the-fact "view" is irrelevant, and unsupported by any objective evidence. Further, at least one bankruptcy case has found an SIR provision to be analogous to a deductible, which is certainly not an additional premium. *In re White Motor Credit Corp.,* 37 B.R. 631, 642 (Bankr.E.D.Ohio 1984). *Cf. Travelers Indemnity Company v. Overseas Ace Hardware Company, Inc.,* 550 So.2d 12, 13 (Fla. 3d DCA 1989) (equating self-insurance generally with a deductible).

Based upon all the considerations discussed above, this Court concludes that the Policies are not executory contracts subject to § 365. United Capitol, like the insurer in *Federal Press,* has already received the most material and substantial performance required under the Policies: the payment in full of over $1.4 million in premiums. At this point, a material breach of the Policies by FIE (such as the failure of FIE to fund the SIR), absent bankruptcy, would not have relieved United Capitol of its coverage obligations under the Policies; likewise, it cannot do so now, after bankruptcy, nor does it invoke the assumption and rejection provisions of § 365.

United Capitol is not remedyless in this situation, however. If, absent bankruptcy, FIE had failed to fund the SIR, United Capitol may have been entitled to maintain an action for damages against FIE based upon that failure. Now, since the advent of FIE's bankruptcy, United Capitol, assuming it has complied with the proper procedures (an issue addressed below), may be entitled to maintain a claim against this estate for those same damages.

### III. *United Capitol's Claim Is Not Entitled To Administrative Expense Status*

█ Concluding that the Policies are not executory in nature does not resolve the principal issue of this case, which is whether or not United Capitol's claim, based upon

FIE's failure to fund the SIR, is entitled to administrative expense priority pursuant to §§ 503 and 507(a)(1) of the Bankruptcy Code. This Court concludes that the applicable precedents overwhelmingly demonstrate that United Capitol's claim cannot be deemed an administrative expense, and must instead be classified as a general unsecured claim.

The universal and oft-cited rule is that the "burden of proving entitlement to an administrative expense is on the claimant and the standard of proof is a preponderance of the evidence." *In re Woodstock Assocs. I, Inc.*, 120 B.R. 436, 451 (Bankr. N.D.Ill.1990). *See also In re Packard Properties, Ltd.*, 118 B.R. 61, 63 (Bankr. N.D.Tex.1990); *In re Philadelphia Mortgage Trust*, 117 B.R. 820, 827 (Bankr. E.D.Pa.1990); *In re Englewood Community Hosp. Corp.*, 117 B.R. 352, 358 (Bankr. N.D.Ill.1990); *In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 971 (Bankr. N.D.Okl.1990); *In re Moore*, 109 B.R. 777, 780 (Bankr.E.D.Tenn.1989); *In re Butcher*, 108 B.R. 634, 637 (Bankr.E.D.Tenn.1989); *In re Sinclair*, 92 B.R. 787, 788 (Bankr. S.D.Ill.1988). This placement of the burden of proof upon the claimant is proper because "[p]riority statutes such as § 503 are to be strictly construed." *In re Woodstock Assocs. I, Inc., supra. See also In re Packard Properties, Ltd., supra; In re Philadelphia Mortgage Trust, supra; In re Englewood Community Hosp. Corp., supra; In re Moore, supra; In re Butcher, supra; In re Sinclair, supra.* United Capitol has failed to meet this burden.

As a general principle, "only those obligations of a debtor's estate which arise post-petition ... are entitled to treatment as administrative expenses." *In re Alchar Hardware Co., Inc.*, 759 F.2d 867, 868–69 (11th Cir.1985) *quoting In re Boogaart of Florida, Inc.*, 23 B.R. 157, 158 (Bankr. S.D.Fla.1982).[2] Clearly, to the extent FIE may have obligations to United Capitol, such obligations arise out of the *pre-petition* contractual relationship between FIE and United Capitol. United Capitol has not proved any post-petition contractual or other relationship established between the parties. As pointed out in *In re Greater Kansas City Transp., Inc., supra*, 71 B.R. at 872, an insurer's post-petition payments to tort claimants whose claims are covered by a pre-petition insurance contract simply cannot be deemed an administrative expense claim. These pre-petition tort claimants, at best, would have held unsecured claims against this bankruptcy estate absent the United Capitol policies. As stated by the bankruptcy court in *Greater Kansas City*, "[t]his Court cannot see how a third party paying off unsecured claims can give rise to an administrative expense claim." *Id.* at 872. *See also Guaranty Nat'l Insurance v. Greater Kansas City Transp., Inc., supra*, 90 B.R. at 465.

The fact that United Capitol is required to make payments now, after the filing of the debtor's petition, cannot in any way transform liability arising from a pre-petition contract into an administrative expense claim. Stressing the time an actual cost is incurred or paid as the determinant of whether a claim qualifies as an administrative expense claim is exactly the same reasoning utilized in *In re M. Frenville Company*, 744 F.2d 332 (3d Cir.1984), which may be fairly characterized as one of the most criticized and least followed precedents decided under the current Bankruptcy Code. In *In re Yanks*, 49 B.R. 56 (Bankr.S.D.Fla.1985), this Court was one of the first to reject *Frenville*.[3] In doing so, this Court stated:

---

**2.** Exceptions to this general principle are those instances where fees and expenses associated with the preparations for filing a voluntary or involuntary petition are accorded administrative expense priority, even though such efforts are necessarily pre-petition. *See Matter of Baldwin–United Corp.*, 79 B.R. 321, 337 (Bankr. S.D.Ohio 1987); *Matter of Olen*, 15 B.R. 750, 752 (Bankr.E.D.Mich.1981).

**3.** Since *Yanks*, many other cases have also criticized *Frenville. See, e.g., Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 201 (4th Cir.1988) ("We have found no court outside the Third Circuit which has followed the reasoning and holding of *Frenville*. All of the cases coming to our attention which have considered the issue have declined to follow *Frenville's* limiting definition of claim."); *In re Levy*, 87 B.R. 107, 109 (Bankr. N.D.Cal.1988). ("[Frenville] has been universal-

*Frenville* fails to consider fundamental bankruptcy policies. It would leave to the vagaries of the timing of events by third parties such obviously crucial issues of bankruptcy relief as priorities of distribution and dischargeability of obligations. To permit a claim to be discharged when creditors file a suit against a third party before a petition is filed and to prevent a claim from being discharged if those same creditors file the same suit against the same third party after a petition is filed is simply inequitable.

*Id.* at 58.

This Court further concludes that United Capitol's continuing performance under the Policies despite FIE's failure to fund the SIR cannot be deemed a benefit it has bestowed upon this estate. First, as previously stated, the Policies contain a provision which *requires* United Capitol to perform even if FIE were to file bankruptcy. The Court cannot help but note, however, that United Capitol is not only performing because it is obligated to do so under a pre-petition contract, but also and probably more importantly because it is in its own best interest to do so. United Capitol's defense of the product liability claims serves to protect its own financial interests. Even if the SIR were funded, United Capitol would be liable for all amounts incurred from $50,000.01 to the million dollar limits of the Policies. In those states allowing direct actions against an insurer, United Capitol could be defaulted in a direct action brought by a product liability claimant if it did not defend. Further, United Capitol is obligated under its policies to indemnify FIE for judgments against FIE. If United Capitol failed to defend product liability actions in non-direct action states, it would leave itself open to far greater exposure under these indemnity provisions. *See, e.g., Cosmopolitan Mutual Ins. Co. v. Eden Roc Hotel,* 258 So.2d 310 (Fla. 3d DCA), *cert. denied,* 262 So.2d 447 (Fla.1972) (insurance company which refused to defend an action by an injured party was bound by the judgment rendered against its insured).

In short, it is in United Capitol's best interest to provide a defense on the product liability claims against FIE. If United Capitol does not defend, it will most likely be obligated to cover much higher judgments than if it does. As a result, the Court further concludes that United Capitol is litigating and defending the product liability actions primarily to preserve its own interests, and not out of any desire to confer benefit upon the estate. Because the only inadvertent "benefit" United Capitol has conferred is that which it is bound to confer, *by a pre-petition contract,* and which only serves to reduce pre-petition claims against this estate, then, in concurrence with the reasoning of the *Greater Kansas City* decisions, this Court concludes that United Capitol does not have an administrative expense claim in this case and instead holds, at best, a general unsecured claim.

### IV. *United Capitol's General Unsecured Claim Was Timely Filed*

■ The parties have also clashed over what legal effect, if any, results from United Capitol's admitted error in placing the wrong case number on its original proof of claim, which prevented the claim from being docketed in this case on or prior to the bar date. This Court concludes that, while such an error was regrettable, it did not result in such prejudice or surprise to the

ly criticized and is not followed outside of the Third Circuit"); *In re Black,* 70 B.R. 645, 648 (Bankr.D.Utah 1986) ("*Frenville* has been severely criticized by other courts). *See also In re Storage Technology Corp.,* 117 B.R. 610 (Bankr. D.Colo.1990); *In re Chateaugay Corp.,* 115 B.R. 760 (Bankr.S.D.N.Y.1990); *In re Grynberg,* 113 B.R. 709 (Bankr.D.Colo.1990); *In re Transportation Systems Int'l, Inc.,* 110 B.R. 888 (D.Minn. 1990); *In re Murray Industries, Inc.,* 110 B.R. 585 (Bankr.M.D.Fla.1990); *In re Diamond Mortgage Corp. of Illinois,* 105 B.R. 876 (Bankr.

N.D.Ill.1989); *In re Production Plating, Inc.,* 90 B.R. 277 (Bankr.E.D.Mich.1988); *In re Amfesco Industries, Inc.,* 81 B.R. 777 (Bankr. E.D.N.Y.1988); *Acevedo v. Van Dorn Plastic Machinery Co.,* 68 B.R. 495 (Bankr.E.D.N.Y.1986); *In re A.H. Robins Co., Inc.,* 63 B.R. 986 (Bankr. E.D.Va.1986); *In re Edge,* 60 B.R. 690 (Bankr. M.D.Tenn.1986); *In re Baldwin–United Corp.,* 57 B.R. 759 (S.D.Ohio 1985); *In re Johns–Manville Corp.,* 57 B.R. 680 (Bankr.S.D.N.Y.1986); and *In re Baldwin–United,* 48 B.R. 901 (Bankr.S.D.Ohio 1985).

debtor as to require the barring of the claim.

Although the original proof of claim did indicate an incorrect case number, it was captioned under the name "F.I.E." which, while not the full legal name of the debtor, is an abbreviation sometimes used by those dealing with the debtor and the debtor itself (*see* the caption of the main bankruptcy case and the adversary proceeding). The law in this circuit is clear that a creditor need not file a letter perfect proof of claim before the expiration of the bar date to preserve its claim. *In re International Horizons*, 751 F.2d 1213 (11th Cir.1985). In this instance, United Capitol filed what this Court concludes was an unquestionably flawed but nevertheless adequate proof of claim which must be deemed timely filed.

This Court finds support for its conclusion in the fact that the debtor and its counsel had notice prior to the filing of the original proof of claim that United Capitol had a claim (indeed United Capitol was listed in the debtor's schedules)' and that United Capitol intended to file a proof of claim. The Court is unaware of any material prejudice or surprise to the debtor resulting from the flawed execution and subsequent delayed docketing of United Capitol's original proof of claim. As a result, this Court concludes that United Capitol's original proof of claim must be deemed timely filed as a general unsecured claim. In accordance with the agreement of the parties, this Court shall later conduct a separate hearing in the main bankruptcy case for the purpose of estimating the amount of this claim.

V. *FIE Is Not Entitled To The Recovery Of Attorneys' Fees For Pursuing And Litigating This Action*

■ Finally, this Court must deny FIE's request for attorneys' fees pursuant to Florida Statute § 627.428. This statute provides that:

(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Although the insurance contracts are arguably governed by Florida law, this Court is of the opinion that § 627.428 does not contemplate an award of attorneys' fees stemming from litigation involving the allowance or disallowance of a claim in bankruptcy, but instead was intended to apply to those routine state court and federal diversity cases where an insurer wrongfully attempts to deny coverage to its insured. This Court believes that the remedy fashioned by § 627.428 was intended to address public policy concerns which, while undeniably important, have little relevance to the claims allowance procedure contemplated by the Bankruptcy Code. FIE's request for attorneys' fees pursuant to § 627.428 is thus denied.

### CONCLUSION

Based upon these findings and conclusions, this Court has entered a separate judgment in accordance with Federal Rule of Bankruptcy Procedure 9021.

DONE and ORDERED.

### FINAL JUDGMENT

This adversary proceeding came on for trial before the Court on August 6, 1991, the undersigned United States Bankruptcy Judge presiding. Having duly considered the pleadings on file, the evidence presented, the testimony and demeanor of the witnesses, and the post-trial memoranda of law filed by the parties, it is hereby

ORDERED and ADJUDGED that

1. The policies of insurance at issue in this adversary proceeding are declared to be non-executory in nature, and thus not subject to the assumption and rejection provisions of § 365 of the Bankruptcy Code. United Capitol Insurance Company is not

relieved of its obligations under the policies.

2. The claim of United Capitol Insurance Company against the debtor is declared to be a general unsecured claim, and not entitled to administrative expense priority. United Capitol's proof of claim is deemed to be timely filed, and the amount of United Capitol's general unsecured claim will be estimated at a later date in the main bankruptcy case.

3. Although Florida law arguably applies to the policies of insurance at issue, the debtor is not entitled to recover attorneys' fees for this proceeding pursuant to § 627.428 of the Florida Statutes. Each party shall bear its own costs.

DONE and ORDERED.